United States Courts
Southern District of Texas
FILED

MAR 25 2019

David J. Bradley, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

```
-----------------------------------------------------x
PACIFIC GULF SHIPPING CO.,                    :
                                              :
                          Plaintiff,          :      CIVIL ACTION NO. H-19-CV-727
                                              :
              v.                              :      IN ADMIRALTY
                                              :
ADAMASTOS SHIPPING & TRADING                  :      UNDER SEAL
S.A., VIGOROUS SHIPPING & TRADING             :
S.A., FEARLESS SHIPPING & TRADING             :
S.A.,  BLUE WALL SHIPPING LTD.,               :
PHOENIX SHIPPING & TRADING S.A.,              :
THALASSA HOLDINGS S.A.,                       :
ALASTOR MARINE S.A., GEORGE                   :
GOURDOMICHALIS, and EFSTATHIOS                :
GOURDOMICHALIS,                               :
                                              :
                          Defendants.         :
-----------------------------------------------------x
```

## FIRST AMENDED VERIFIED COMPLAINT

**COMES NOW**, Plaintiff PACIFIC GULF SHIPPING CO. (hereinafter "PACIFIC GULF"

or "Plaintiff"), by its undersigned counsel, and files this First Amended Verified Complaint against

Defendants ADAMASTOS SHIPPING & TRADING S.A. (hereinafter "ADAMASTOS

SHIPPING"), VIGOROUS SHIPPING & TRADING S.A. (hereinafter "VIGOROUS

SHIPPING"), FEARLESS SHIPPING & TRADING S.A. (hereinafter "FEARLESS

SHIPPING"), BLUE WALL SHIPPING LTD. (hereinafter "BLUE WALL"), PHOENIX

SHIPPING & TRADING S.A. (hereinafter "PHOENIX SHIPPING"), THALASSA HOLDINGS

S.A. (hereinafter "THALASSA"), ALASTOR MARINE S.A. (hereinafter "ALASTOR"),

GEORGE GOURDOMICHALIS (hereinafter "George Gourdomichalis"), and EFSTATHIOS

GOURDOMICHALIS (hereinafter "Stathis Gourdomichalis") (collectively the "Defendants").

This is a Supplemental Rule B attachment action in order to obtain security for Plaintiff's maritime claims.  Plaintiff previously filed a Rule B attachment action in the U.S. District Court for the District of Oregon on December 3, 2018.  *See Pacific Gulf Shipping Co. v. Adamastos Shipping & Trading, S.A.*, et al., 3:18-cv-2076, pending before Chief U.S. District Judge Michael Mosman. In that action, Plaintiff successfully attached the M/V VIGOROUS, as partial security for Plaintiff's claim.  Defendants sought to vacate the Rule B attachment in Oregon pursuant to Supplemental Rule E(4)(f), arguing that Plaintiff had not met its burden to sustain the attachment on a theory of alter-ego or successor liability.  District Judge Mosman held two (2) hearings on the Defendants' challenges, denied the motion to vacate, and ruled that Plaintiff had established probable cause to sustain the Rule B attachment of the M/V VIGOROUS on a credible theory of alter-ego liability. The Oregon case is now proceeding to discovery and a trial on the merits has been set for November 12, 2019.   Notwithstanding, the VIGOROUS is only estimated to have a value of approximately $9.72 million dollars and therefore does not fully secure Plaintiff's claim for damages of nearly $24,000,000.

Accordingly, Plaintiff respectfully seeks to attach an additional Vessel, the M/V FEARLESS, which is part of the same alter-ego fleet of sham companies and vessels as the M/V VIGOROUS.  In further support thereof, Plaintiff respectfully avers and pleads as follows:

## JURISDICTION, VENUE AND PARTIES

1.      Subject matter jurisdiction of this Honorable Court is based upon admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and is brought under the provision of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. This case is also an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure for claim of breach of a maritime contract. The Court also has

2

federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 204.

2.      Jurisdiction and venue are proper in this matter, as an asset of the Defendants that may be attached by process of maritime attachment and garnishment under the provisions of Rule B, *i.e.* the M/V FEARLESS, is or will during the pendency of this action be within the Southern District of Texas, *to wit*, the port of Houston.

## THE PARTIES

3.      At all times material hereto, Plaintiff PACIFIC GULF, was and still is a foreign company organized under the laws of The Marshall Islands.

4.      At all times material hereto, Defendant ADAMASTOS SHIPPING was and still is a foreign company incorporated under the laws of Liberia and an address of "Care of PHOENIX SHIPPING" located on the Akti Miaouli, in Piraeus, Athens, Greece.

5.      At all times material hereto, Defendant VIGOROUS SHIPPING was and still is a foreign company incorporated under the laws of Liberia and an address of "Care of PHOENIX SHIPPING" located on the Akti Miaouli, in Piraeus, Athens, Greece.

6.      At all times material hereto, Defendant FEARLESS SHIPPING was and still is a foreign company incorporated under the laws of Liberia and an address of "Care of PHOENIX SHIPPING" located on the Akti Miaouli, in Piraeus, Athens, Greece.

7.      At all times material hereto, Defendant BLUE WALL, was and still is a foreign company registered to do business in The Marshall Islands and maintains an address of "Care of PHOENIX SHIPPING" located on the Akti Miaouli, in Piraeus, Athens, Greece.

8.      At all times material hereto, Defendant PHOENIX SHIPPING was and still is a foreign company registered to do business in The Marshall Islands which has maintained an office located on the Akti Miaouli, in Piraeus, Athens, Greece since 2013. The current

3

address is at 47- 49 Akti Miaouli, 5th Floor, Piraeus 185 36, Greece.

9. At all times material hereto, Defendant THALASSA was and still is a foreign company organized under the laws of The Marshall Islands and run from the same address as PHOENIX SHIPPING.

10. At all times material hereto, Defendant ALASTOR was and still is a foreign company organized under the laws of The Marshall Islands and run from the same address as PHOENIX SHIPPING.

11. At all times material hereto, Defendant George Gourdomichalis was and is an individual who is a foreign citizen residing in Greece and working from an office within PHOENIX SHIPPING located on the Akti Miaouli, in Piraeus, Athens, Greece.

12. At all times material hereto, Defendant Stathis Gourdomichalis was and is an individual who is a foreign citizen residing in Greece and working from an office within PHOENIX SHIPPING located on the Akti Miaouli, in Piraeus, Athens, Greece.

## THE SUBSTANTIVE CLAIMS

13. On or about April 8, 2014, Plaintiff entered into a charter party agreement with Defendant ADAMASTOS SHIPPING for use of the M/V ADAMASTOS (hereinafter "the Vessel") for a period between ninety (90) days and one hundred and eighty (180) days. The charter agreement between Plaintiff and Defendant ADAMASTOS set forth specific terms, rights, and obligations between the parties. *See* Charter Party, Exhibit 1.

14. The April 8, 2014 charter party agreement is a maritime contract.

15. At all relevant times notices and contact details for the Owners of the Vessel, Defendant ADAMASTOS SHIPPING was listed as "PHOENIX SHIPPING." *See* Exhibit 1.

4

16.     Pursuant to the terms of the charter party, Plaintiff was to pay USD 9,000 per day including overtime payable ten (10) days in advance plus USD 130,000 gross ballast bonus to Defendant ADAMASTOS SHIPPING, payable every fifteen (15) days in advance in exchange for the use of a seaworthy vessel. *Id.*

17.     The parties further agreed to the arbitration of disputes arising out of the maritime contract in London with English law to apply. *Id.*

18.     Plaintiff duly complied with all obligations under the terms of the charter party agreement.

19.     On or about July 14, 2014, Plaintiff, as disponent owners of the Vessel, entered into a sub-charter party agreement with Integris Co Ltd. for a one (1) time charter trip of one (1) laden leg *via* Brazil to Singapore-Japan range carrying lawful/harmless grain products in bulk.

20.     Integris Co Ltd. sub-chartered the Vessel to Marubeni Corporation who was the owner of the soyabean cargo to be carried by the Vessel.

21.     The Vessel arrived at Sao Francisco Do Sul, Rio Grande on or about July 31, 2014 and commenced loading of a cargo of soyabeans starting at 0120 hours LT on August 1, 2014.

22.     On or about August 5, 2014, the Vessel was inspected by local Port State Control authorities in Brazil. The Brazilian authorities discovered no fewer than forty-two (42) deficiencies with the Vessel. The Port State Control authorities detained the Vessel pending further investigation and rectification of the deficiencies.

23.     At or about 1855 hours LT on August 6, 2014, and while still loading cargo, the Vessel broke free of her moorings, drifted to the middle of the channel, and grounded.

24.     The Vessel had loaded approximately 59,674.680 metric tons of soyabeans as of August 6, 2014, at or about the time that she broke free of her moorings and grounded.

25.     The Vessel commenced refloating operations with her own engines and thereafter with the assistance of tugs and pilots, as well as by Salvors, Rebocadores do Brasil SA, and was refloated on August 7, 2014. Subsequently, the Vessel was shifted to the inner anchorage north of the terminal berth.

26.     After the grounding, the terminal would not permit the Vessel to re-berth alongside to load the remaining cargo without meeting various conditions, including the posting of security. ADAMASTOS SHIPPING, PHOENIX SHIPPING, George Gourdomichalis, and/or Stathis Gourdomichalis (and/or others acting at their instruction and control) failed, neglected, and otherwise refused to comply with the terminal requirements and the Port Captain ordered the Vessel to shift to the outer anchorage, given the Vessel's draft and the Port State Control deficiencies and detention imposed on the Vessel.

27.     Over the course of the next six (6) months, the Vessel remained under detention, failed to load the remainder of the cargo, and failed to complete the voyage as required under the various charter party obligations.

28.     Defendants abandoned not only the Vessel, their contractual partners, and the cargo, but also the crewmembers they had hired to live and work onboard the Vessel.

29.     During this period, numerous claims and causes of actions were commenced against the Vessel by various third parties in Brazil, including (but not limited to) the following:

    a.  $1,078,512 action by the Salvors for unpaid fees and costs;

b. $160,000 action by Sagres Agenciamentos Maritimos Ltda. for unpaid agency fees;

c. $8,250 action by Kronos Maritime Agent Limited for unpaid agency fees;

d. An action by the Labour Prosecutor's Office which fined the Vessel $19,000 per day from the period of November 26, 2014 – December 30, 2014. As of December 31, 2014, the LPO action fine was increased to $150,000 per day for non- compliance through January 18, 2015, which was subsequently increased to $187,000 per day.

e. On or about December 14, 2014, the Federal Government of Brazil commenced an action directing the Vessel and her owners to make the necessary repairs to the Vessel and deliver the cargo to its final destination.

f. On or about January 3, 2015 the Master and crew of the Vessel commenced an action to recover their wages which had not been paid while working on the Vessel.

30.    On January 7, 2015, PHOENIX SHIPPING purportedly submitted a letter to the Greek government, asserting PHOENIX SHIPPING ceased operation of the M/V ADAMASTOS.

31.    No contemporaneous written notice of the termination of management services was ever provided by PHOENIX SHIPPING to ADAMASTOS SHIPPING.

32.    No written notice of the termination of management services was ever provided by PHOENIX SHIPPING to Plaintiff as was required pursuant to clause 18.1 of the ship management agreement. *See* George Gourdomichalis Transcript, Exhibit 3, at p. 157:1-8; *see also* Ship Management Agreement dated December 7, 2012 at Exhibit 11.

33.    Despite being the operator[1] and manager for the Vessel, PHOENIX SHIPPING

---

[1] Operator means an entity "who is responsible for the operation, manning, victualing, and supplying of the vessel." 33 U.S.C. 1901(9).

did not seek repair estimates for the ADAMASTOS, did not provide budget proposals for repair work, and did not send any written demands for payment to ADAMASTOS SHIPPING for any of the items which needed to be rectified and the claims which needed to be settled in Brazil. *See* George Gourdomichalis Transcript, Exhibit 3, at p. 153:7-11.

34.     On February 12, 2015, the ADAMASTOS was formally found and/or declared by Brazilian authorities to have been abandoned by both her owners and managers.

35.     Marubeni Corporation sought to recover its loss of value of its soyabean cargo, estimated to be $32,650,000 against Integris Co Ltd. in London arbitration proceedings.

36.     In turn, Integris Co Ltd. filed claims against Plaintiff in London arbitration proceedings and sought no less than $18,000,000 plus $559,219.68 for the damages and losses caused by the Vessel's failure to complete the voyage to Marubeni Corporation.

37.     Integris Co Ltd. has sought an additional $737,451.82 in damages for overpaid hire, communication/entertainment/victualling fees, and fuel oil purchased.

38.     On or about June 6, 2016, Plaintiff pursued its contract claims in London arbitration against ADAMASTOS SHIPPING for breach of the charter party agreement on the grounds that, *inter alia*:

    a.  The Vessel was not suitable for loading, carriage, and discharge.

    b.  The Vessel was not fit for service under the charter party agreement or for any voyage and the Vessel was not seaworthy and/or properly manned, equipped, and supplied.

    c.  The Vessel did not comport with the regulations and/or requirement for any port, port of call, or country.

    d.  The Vessel did not have up-to-date certificates on board.

    e.  ADAMASTOS SHIPPING breached their obligation under the charter party agreement "to make the ship seaworthy, properly manned, equipped, and supplied, and make the holds fit and safe for the

reception, carriage and preservation of the cargo."

    f.   ADAMASTOS SHIPPING breached the charter party agreement when ADAMASTOS SHIPPING: (1) failed to take steps to remedy the deficiencies; (2) failed to complete loading onboard the Vessel; (3) failed to commence its voyage to China; (4) failed to deliver the cargo to China; (5) abandoned the Vessel, the contracted voyage, the cargo, and carriage of cargo; and (6) failed to deliver the cargo to the discharge port.

39.    On April 19, 2017, the Sole Arbitrator issued a final award against ADAMASTOS SHIPPING and declared that Plaintiff was entitled to be indemnified by ADAMASTOS SHIPPING for *any and all* liabilities that Plaintiff "have or might be found to have or might in the near future" related to the claims up the charter chain by Marubeni Corporation and Integris Co Ltd., plus applicable costs, fees, and interest. *See* First Final Award, Exhibit 2.

40.    Plaintiff had a valid and ripe claim against ADAMASTOS SHIPPING under English law as soon as the Cargo Claim was pursued by Integris Co. Ltd. against Plaintiff in arbitration in May 2015 consistent with the parties' charter party agreements.

41.    On May 23, 2018, Marubeni's Cargo Claim was settled by Intergis Co Ltd. in exchange for payment of $18,000,000. *See* Exhibit 27.

42.    The settlement amount for Marubeni's Cargo Claim was paid on May 25, 2018 from the Charterers P&I Club on behalf of Intergis Co Ltd. to Marubeni's London Solicitors, Messrs. Roose & Partners. A copy of the Bank Swift is attached hereto as Exhibit 28.

43.    Once the Cargo Claim was settled, there was absolutely no dispute that the actual liability against Plaintiff in the underlying arbitration proceedings had been reduced to quantifiable damages. Plaintiff's claim up the charter party agreement chain against ADAMASTOS SHIPPING is (and was) ripe as a matter of applicable English Law.

44.    The Cargo Claim was subsequently reduced to writing and settled by and between

Intergis Co Ltd. and Plaintiff by way of a settlement agreement dated March 13, 2019. A copy of the settlement agreement is attached hereto as Exhibit 29. The Settlement Sum was $18,000,000 for the Cargo Claim and $500,000 for costs asserted by Intergis against Plaintiff.

45.     The Charterers P&I Club, which held the applicable P&I Insurance for both Intergis Co Ltd. and Plaintiff for this particular voyage has adjusted each party's respective claim files to reflect the fact that Intergis has been fully reimbursed for the Settlement Sum and that Plaintiff PACIFIC GULF holds the Settlement Sum as a loss on its own Liability File with the Club. A copy of the applicable debits and credits reflecting this accounting arrangement are attached hereto as Exhibit 30.

46.     On March 14, 2019, Intergis Co. Ltd. issued a Receipt and Release letter, confirming that the claim was fully settled and funded in accordance with the parties' March 13, 2019 Settlement Agreement. A copy of the Receipt and Release is attached hereto as Exhibit 32.

47.     Plaintiff had a valid and ripe claim against ADAMASTOS SHIPPING under English Law from the date the claim was first noticed and pursued by Intergis in May 2015. Notwithstanding, the Marubeni/Intergis settlement of the Cargo Claim and subsequent Settlement Agreement between Intergis Co Ltd. and Plaintiff PACIFIC GULF quantify the damages suffered from the claim in an amount of no less than $18,500,000.

## COUNT I – RECOGNITION AND ENFORCEMENT OF THE ARBITRATION AWARDUNDER THE NEW YORK CONVENTION

48.     PACIFIC GULF restates and re-alleges paragraphs 1 – 47 in the above foregoing Verified Complaint as if set forth herein.

49.     Plaintiff hereby petitions this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et. seq.* (the "New York Convention"), for an order confirming the Award

in favor of Plaintiff and against Defendants, joint and severally.

50.    The United States, Liberia, The Marshall Islands, and the United Kingdom (*i.e.* the country in which the Award was rendered), are signatories of the New York Convention.

51.    Jurisdiction is proper in this Court pursuant to 9 U.S.C. § 203.

52.    Venue is proper in this Court pursuant to 9 U.S.C. § 204.

53.    The April 19, 2017 arbitration award is final and no appeal has been (or can be) taken by ADAMASTOS SHIPPING.  Plaintiff respectfully submits that no grounds exist for refusal or deferral of recognition or enforcement of the Award against the Defendants under the New York Convention.  For the foregoing reasons, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants recognizing and enforcing the Award in the amount of at least $18,500,000, plus applicable interest, costs, and fees as per the Award.

54.    Plaintiff hereby reserves the right to further petition this Court to confirm any further award of interest or costs which may be rendered in respect of this matter.

## COUNT II - ALTER-EGO LIABILITY

55.    PACIFIC GULF restates and re-alleges paragraphs 1 – 54 in the above foregoing  Verified Complaint as if set forth herein.

56.    The alter ego doctrine applies when (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil.[2]

a.    **Domination and Control**

57.    Defendants George Gourdomicahlis and Stathis Gourdomichalis, by and

---

[2] *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003).

through PHOENIX SHIPPING, THALASSA, and ALASTOR, dominate and control Defendants ADAMASTOS SHIPPING, BLUE WALL, VIGOROUS SHIPPING, FEARLESS SHIPPPING and at least six (6) other single purpose shell companies which nominally own the vessels in the BLUE WALL fleet.

      **i.**     ***Phoenix Shipping & Trading S.A.***

58.     On October 26, 2011, PHOENIX SHIPPING was incorporated under the laws of the Marshall Islands. *See* Phoenix Shipping's Articles of Incorporation, Exhibit 5.

59.     PHOENIX SHIPPING's principle place of business has always been on a street named "Akti Miaoli" in Piraeus Greece. The office was originally located at 25 Akti Miaouli Street, Piraeus Greece. In 2014, PHOENIX SHIPPING moved to 47-49 Akti Miaouli Street, Piraeus Greece. *See* George Gourdomichalis Transcript, Exhibit 3, at pp. 66:19 – 67:5.

60.     Like a phoenix rising from the ashes, PHOENIX SHIPPING was founded in order to create a new business for George Gourdomichalis and Stathis Gourdomichalis following the failure of their previous shipping companies, including but not limited to Gourdomichalis Naftiki Eteria, Free Bulkers, and G. Bros Maritime S.A. *See* George Gourdocumichalis Transcript, Exhibit 3, pp. 14:16-19:19; 46:10-12; 63:15-17.

61.     As PHOENIX SHIPPING was described by George Gourdomichalis, "[T]here was no real business plan. It was more our father's, if you will, last business venture in trying to help us establish the business." *Id.*

62.     Since PHOENIX SHIPPING's founding in 2011, George Gourdomichalis has made all decisions concerning commercial operations, chartering, and insurance. *See* George Gourdomichalis Transcript, Exhibit 3, pp. 29:21 – 30:9 (describing his responsibilities

as "general management of operations, chartering, insurances, if you will. All the commercial side.").

63.     Since PHOENIX SHIPPING's founding in 2011, Stathis Gourdomichalis has made all decisions in the company on for the financial, budgeting, purchasing, and administration side of the business. *See* George Gourdomichalis Transcript, Exhibit 3, p. 30:16-18; Stathis Gourdomichalis Transcript, Exhibit 4, p. 13:12-22.

64.     For each and every vessel operated by PHOENIX SHIPPING, including the M/V ADAMASTOS, M/V VIGOROUS (and the other SPVs held by BLUE WALL), all communications and exchanges with the Vessel's Classification Society, Flag Administration, and Insurers were performed by PHOENIX SHIPPING, by and through George Gourdomichalis and Stathis Gourdomichalis or others acting at their instruction. *See* George Gourdomichalis Transcript, Exhibit 3, pp. 148:4-13.

65.     Notwithstanding the positions which George Gourdomichalis and Stathis Gourdomichalis held at PHOENIX SHIPPING, there are no records on file with the Greek authorities which list George Gourdomichalis or Stathis Gourdomichalis as employees of PHOENIX SHIPPING as required under Greek Law. *See* Stathis Gourdomichalis Transcript, Exhibit 4, at p. 13:3-15.

66.     Pursuant to PHOENIX SHIPPING's Meeting Minutes of October 27, 2011, Drakoulis Gourdomichalis, the father of George Gourdomichalis and Stathis Gourdomichalis, assumed the roles of President, Secretary, and Treasurer of PHOENIX SHIPPING as well as the Sole Director of PHOENIX SHIPPING. *See* Phoenix Shipping's Board of Director Minutes of Meeting dated October 27, 2011, Exhibit 6.

67.     As Sole Director, Drakoulis Gourdomichalis accepted Defendant

ALASTOR's  offer to purchase two hundred and fifty shares without par value of PHOENIX
SHIPPING at $1.00  per share and THALASSA's offer to purchase two hundred and fifty
shares without par value of  PHOENIX SHIPPING at $1.00 per share. *See* Phoenix Shipping's
Board of Director Minutes of  Special Meeting dated October 27, 2011, Exhibit 7.

68.     Eight (8) share certificates were issued for sixty two point five (62.5) bearer
shares  each. Four certificates were issued to ALASTOR and THALASSA, respectively.  *Id.*

69.     George  Gourdomichalis  is  the  sole  owner  of  ALASTOR,  a  company
organized  under the laws of the  Marshall Islands which is a "Marshall Islands vessel
company" that "does  various investments or other activities in the maritime industry." *See*
George Gourdomichalis  Transcript, Exhibit 3, p. 37:9-25.

70.     ALASTOR has no office, no phone number, no employees, no staff, and
no identifiable presence. It is a shell company which George Gourdomichalis operates from
Akti  Miaouli.

71.     Stathis Gourdomichalis is the owner of THALASSA, a company organized
under  the laws of the Marshall Islands which conducts the same type of maritime investment
business as  ALASTOR. *Id.*, Exhibit 3, p. 38:20 – 39:13; Stathis Gourdomichalis Transcript,
Exhibit 4, p.  14:15-22.

72.     THALASSA has no office, no phone number, no employees, no staff, and
no identifiable presence. It is a shell company which Stathis Gourdomichalis operates from
Akti  Miaouli.

73.     THALASSA and ALASTOR have no business other than to serve as the
conduit  through  which George  Gourdomichalis  and  Stathis  Gourdomichalis  own  and
dominate other  businesses including PHOENIX SHIPPING and BLUE WALL SHIPPING.

*See* Stathis Gourdomichalis Transcript, Exhibit 4, p. 14:17-18.

74.     From 2012 until the resignation of Drakoulis Gourdomichalis from PHOENIX SHIPPING in 2017, **no** shareholder meetings for PHOENIX SHIPPING were held by the only two (2) shareholders, George Gourdomichalis and Stathis Gourdomichalis. *See* George Gourdomichalis Transcript, Exhibit 3, pp. 62:11 – 63:13.

75.     On or about December 4, 2017, Drakoulis Gourdomichalis resigned as the sole director of PHOENIX SHIPPING. *See* Resignation Letter, Exhibit 8.

76.     On or about December 5, 2017, George Gourdomichalis and Stathis Gourdomichalis held a meeting to accept the resignation of their father as the sole director of PHOENIX SHIPPING and elected themselves as the directors of PHOENIX SHIPPING. *See* Phoenix Shipping's Shareholder Minutes of Meeting dated December 5, 2017, Exhibit 9.

77.     There are no other directors at PHOENIX SHIPPING.

78.     In addition to dominating and controlling all business of PHOENIX SHIPPING, serving as the sole shareholders through nominal offshore shell companies, and electing themselves as the sole directors of the company, they also elected themselves as the only officers of PHOENIX SHIPPING.

79.     Specifically, George Gourdomichalis was elected as the President and Stathis Gourdomichalis as the Secretary and Treasurer of PHOENIX SHIPPING. *See* Phoenix Shipping's Board of Director Minutes of Meeting dated December 5, 2017, Exhibit 9.

80.     There are no other officers of PHOENIX SHIPPING.

81.     On or about March 22, 2018, the board of directors of PHOENIX SHIPPING held a meeting to amend the Articles of Incorporation and issuance of shares. George

Gourdomichalis   and   Stathis   Gourdomichalis   agreed   to   accept   THALASSA's   offer   to purchase two hundred and fifty (250) registered shares without par value for $1.00 USD; accept   ALASTOR's   offer   to   purchase   one   hundred   and   eight   five   point   five   (185.5) registered shares without par value for $1.00 USD; and accept Golden Hind Shipping & Trading S.A.'s offer to purchase sixty two point five (62.5) registered shares without par value for $1.00 USD. *See* Phoenix Shipping's Board of Director Minutes of Special Meeting dated March 22, 2018, Exhibit 10.

82.     Golden Hind Shipping & Trading S.A. is another off-shore shell company organized under the laws of the Marshall Islands by George Gourdomichalis for the benefit of  himself  and  one  of  his  children.  George  Gourdomichalis  reportedly  gifted  his  son  one of four  shares certificates for sixty two point five (62.5) shares in PHOENIX SHIPPING in the name of  Golden Hind. *See* George Gourdomichalis Transcript, Exhibit 3, p. 59:23 – 60:4.

83.     Stathis  Gourdomichalis  remained  the  owner  of  fifty  percent  (50%)  of PHOENIX  SHIPPING by and through THALASSA and George Gourdomichalis remained the owner of thirty  seven point five percent (37.5%) of PHOENIX SHIPPING by and through ALASTOR.

84.     In the aggregate, George Gourdomichalis and Stathis Gourdomichalis owned eighty seven point five percent (87.5%) of PHOENIX SHIPPING through shell companies with  Geourge Gourdomichalis' son having been gifted the remaining twelve point five perecent (12.5%)  by George Gourdomichalis through another off-shore shell company, Golden Hind. *See* Board of  Director Minutes of Special Meeting dated March 22, 2018, Exhibit 10.

ii.     ***Adamastos Shipping & Trading S.A.***

85.     ADAMASTOS  SHIPPING  was  incorporated  in  the  Republic  of  Liberia  in

December 2012. *See* George Gourdomichalis Transcript, Exhibit 3, p. 96:7-18.

86.     ADAMASTOS SHIPPING has a registered address of 80 Broad Street, Monrovia, Liberia, a mail-box address that it shares with all Liberian corporations. *Id.*, at p. 97:16-24.

87.     While Defendant ADAMASTOS SHIPPING had a listed and registered address in Liberia, it is simply a "brass plate", shell company possessing no active office space, employees, telephone numbers, fax numbers, and/or staff at this location. Instead, all company business is conducted by George Gourdomichalis and Stathis Gourdomichalis from their office on the Akti Miaouli in Piraeus Greece, directly and/or indirectly by and through PHOENIX SHIPPING.

88.     ADAMASTOS SHIPPING has no physical office anywhere in the world and has never had a lease or otherwise paid rent for any office space in Liberia or Greece. *Id.*, at p. 97:20 – 98:10.

89.     ADAMASTOS SHIPPING has never had any employees or office staff. *Id.*, at p. 98:11-18.

90.     George Gourdomichalis was the President of ADAMASTOS SHIPPING and a member of the board of directors of the company. *Id.*, at 99:22-25.

91.     Stathis Gourdomichalis was the Secretary of ADAMASTOS SHIPPING and a director of the company. *See* Stathis Gourdomichalis Transcript, Exhibit 4, at p. 57:13-21.

92.     PHOENIX SHIPPING ministerially entered into a Ship Management Agreement with ADAMASTOS SHIPPING on December 7, 2012 to run all aspects of the M/V ADAMASTOS and ADAMASTOS SHIPPING's business, including all chartering, operations, crew management, technical management, commercial management, insurance

services, and  accounting services for the M/V ADAMASTOS. *See* Ship Management Agreement-Adamastos  Shipping, Exhibit 11.

93.    George Gourdomichalis negotiated and signed the Ship Management Agreement on behalf of ADAMASTOS SHIPPING, contemporaneously with his service as the person in charge of all commercial operations and chartering for PHOENIX SHIPPING. *Id*; *See also* George  Gourdomichalis Transcript, Exhibit 3, at pp. 84:19 – 85:4.

94.    All notices under the Ship Management Agreement from PHOENIX SHIPPING to ADAMASTOS SHIPPING was "care of" PHOENIX SHIPPING at its office address on Akti Miaouli Street in Piraeus, Greece. *See* Exhibit 11.

95.    PHOENIX SHIPPING performed all aspects of the commercial operation, chartering, and technical operation for the M/V ADAMASTOS. *See* George Gourdomichalis  Transcript, Exhibit 3, at pp. 85:12 – 86:8; 87:2-20; 88:7-21.

96.    No written instructions and/or objections as to the commercial operation of the M/V ADAMASTOS were ever provided by ADAMASTOS SHIPPING to PHOENIX SHIPPING. *Id.*, at p. 86:21 – 87:1; 88:7-21. This is because all decisions were taken by and for the benefit of George Gourdomichalis and Stathis Gourdomichalis.

97.    All chartering negotiations on behalf of the M/V ADAMASTOS were performed by George Gourdomichalis for and on behalf of PHOENIX SHIPPING and ADAMASTOS SHIPPING. *Id.*, at p. 87:5-12. No one else actively participated in and/or approved contract negotiations and/or decisions for the chartering of the M/V ADAMASTOS. *Id.*, at p. 87:16 – 20.

98.    All banking operations, financial records, and recordkeeping on behalf of ADAMASTOS SHIPPING was performed solely by George Gourdomichalis and Stathis

18

Gourdomichalis by and through PHOENIX SHIPPING, or by person(s) under their direction and control. *Id.*

99.    In addition, PHOENIX SHIPPING was the Document of Compliance holder for the M/V ADAMASTOS. *Id.,* at pp. 147:20 – 148:3.

100.    The U.S. Coast Guard requires "a valid Document of Compliance certificate if you are the responsible person who, or company which, owns a U.S. vessel engaged on foreign voyages, carrying more than 12 passengers, or is a tanker, bulk freight vessel, freight vessel, or a self-propelled mobile offshore drilling unit of 500 gross tons or more." 33 C.F.R. 96.330. The Document of Compliance ensures that the responsible party has completed a valid safety management audit, that the vessel is certified, and that the vessel operates in accordance with the approved Safety Management System. *Id.*

101.    The M/V ADAMASTOS had a 2012 first preferred mortgage dated December 14, 2012. The sole signatory to the agreement on behalf of ADAMASTOS SHIPPING was George Gourdomichalis. *See* Adamastos Mortgage, Exhibit 12.

102.    The first preferred mortgage was a complex financing scheme in order to permit ADAMASTOS SHIPPING, PHOENIX SHIPPING, and the Gourdomichalis Brothers to take possession of a ship without contributing any significant capital and use the Vessel to trade for the benefit of its beneficial and dominating owners, without risk. *See* George Gourdomichalis Transcript, Exhibit 3, pp. 114:19 – 115:6.

103.    The M/V ADAMASTOS was acquired and held in the name of an off-shore shell company ADAMASTOS SHIPPING, so that George Gourdomichalis and Stathis Gourdomichalis would have a vessel to own and operate at PHOENIX SHIPPING. *See* Stathis Gourdomichalis Transcript, Ex. 4, at pp. 102:16-22 ("We proposed it to our father and

he decided to go ahead with  this deal because he wanted to assist us into managing more ships,

et cetera, et cetera. And because  we also were coming out of a very difficult financial situation

at that time. My father decide -- so  I can explain a bit more the structure of the deal, because

it is very confusing.").

104.    In  fact,  ADAMASTOS  SHIPPING  put  **no**  equity  into  the  Vessel.

George Gourdomichalis Transcript, Exhibit 3, at pp. 114:19 – 115:6; 128:3-15. ADAMASTOS

SHIPPING  was not only undercapitalized, it had **no** capitalization.

105.    Specifically, the mortgage recorded a $6,000,000 first preferred mortgage on

the  Vessel; had a second tranche of $18,000,000 which was nothing more than a secondary

security interest  for  the  benefit  of  accounting  purposes;  and  included  a  third  tranche  of

$1,000,000  purportedly for repairs to the M/V ADAMASTOS. *Id*., at pp. 114:19 – 117:6.

106.    All repairs and/or necessary maintenance on the Vessel was carried out under

the  direction, control, and supervision of George Gourdomichalis, Stathis Gourdomichalis,

and/or   PHOENIX  SHIPPING  superintendents  acting  at  the  direction  of  George

Gourdomichalis and/or   Stathis Gourdomichalis. *See* Stathis Gourdomichalis Transcript,

Exhibit 4, at p.105:11 – 106:7.

107.    The Vessel had a fair market value of merely $6,000,000 (at best), yet had

liabilities  on it for over four (4) times its actual value as a 1995 dry bulk vessel. *See* George

Gourdomichalis  Transcript, Exhibit 3, at p. 115:14-18.

108.    George Gourdomichalis attended all meetings with the financing bank as

the   dominating and controlling individual who would be responsible for the technical and

commercial  operation of the Vessel, as well as hiring and firing of shipboard staff and crew,

procurement of   insurances, and overall responsibility for the maintenance, management, and

control of the Vessel. *Id.*, at p. 119:2-4; *see also* Exhibit 11.

109. All notices under the first preferred mortgage were to be provided to ADAMASTOS SHIPPING care of PHOENIX SHIPPING at the PHOENIX SHIPPING address of 25 Akti Miaoli Street, Piraeus Greece. *See* George Gourdomichalis Transcript, Exhibit 3, at p. 121:5-12.

110. ADAMASTOS SHIPPING never paid any of the quarterly installments of $175,000 which were due and owing for the repayment of the $6,000,000 tranche before the Defendants George Gourdomichalis, Stathis Gourdomichalis, and PHOENIX SHIPPING abandoned the M/V ADAMASTOS in Brazil in January 2015. *Id.*, at p. 123:1 – 125:14.

111. George Gourdomichalis and Stathis Gourdomichalis were signatories to the ADAMASTOS SHIPPING bank account. *See* George Gourdomichalis Transcript, Exhibit 3, at p. 105:7-24.

112. All communications from the crew regarding the M/V ADAMASTOS were sent only to PHOENIX SHPPING. *Id.*, at p. 149:19 – 150:4.

113. No communications were ever sent to ADAMASTOS SHIPPING.

114. The same arrangement is true for VIGOROUS SHIPPING, FEARLESS SHIPPING, and BLUE WALL. All communications go through PHOENIX SHIPPING.

115. There were no written request for a budget submitted by ADAMASTOS SHIPPING and none prepared by PHOENIX SHIPPING for a budget to operate, maintain, and/or for repair of the M/V ADAMASTOS in Brazil. *Id.*, at p. 153:4-11.

116. There was no request made by PHOENIX SHIPPING and/or ADAMASTOS SHIPPING to the mortgagee bank seeking additional support and/or to draw

down further on the loan. *Id.*

117.    No written reports were made by PHOENIX SHIPPING to ADAMASTOS SHIPPING concerning the detention in Brazil. *Id.*, at pp. 152:25 – 153:25.

118.    No notice was provided by ADAMASTOS SHIPPING, PHOENIX SHIPPING, George Gourdomichalis, or Stathis Gourdomichalis or anyone else acting at their instructions, to charterers Plaintiff PACIFIC GULF concerning the deteriorating condition of the Vessel, even though Defendants, including George Gourdomichalis and Stathis Gourdomichalis knew that Defendants were abandoning the Vessel in January 2015.

119.    None of these decisions were contemporaneously or properly memorialized or recorded in contemporaneous communications between the corporate entities and/or in company records because at all relevant times, it was George Gourdomichalis and Stathis Gourdomichalis who were making all decisions for and on behalf of the Vessel, ADAMASTOS SHIPPING and PHOENIX SHIPPING.

120.    ADAMASTOS SHIPPING was merely a captive corporation through which George Gourdomichalis, Stathis Gourdomichalis, and PHOENIX SHIPPING dominated and controlled all activities of the off-shore shell corporation and the M/V ADAMASTOS before ultimately abandoning the Vessel in Brazil in breach of the charter party agreement, for their own benefit, and to the detriment of Plaintiff PACIFIC GULF.

121.    ADAMASTOS SHIPPING, VIGOROUS SHIPPING, FEARLESS SHIPPING, BLUE WALL, THALASSA, ALASTOR, and PHOENIX SHIPPING are registered offshore in jurisdictions of convenience such as the Marshall Islands and Liberia because they are a 'tried and tested' tax shelter, with minimum regulatory oversight, and permitted to operate in Greece pursuant to Law 89 without requirement to pay income tax in Greece. *See* George

Gourdomichalis Transcript,  Exhibit 3, at pp. 33:10-11; 20:13 – 22.

### iii.    *Blue Wall Shipping Ltd.*

122.    BLUE WALL was established by George Gourdomichalis and Stathis Gourdoichalis for the purpose of owning and operating a fleet of Vessels. *See* Blue Wall's Website  Strategy, Exhibit 13.

123.    BLUE WALL was incorporated on February 8, 2013 in the Marshall Islands. *See* Blue Wall Certificate of Incorporation, Exhibit 14.

124.    BLUE WALL holds itself out as a Vessel owner and states that: "It operates **wholly owned**, top quality dry bulk vessels. BLUE WALL has built a strong balance sheet, **owns cash flow generating vessels** and is well positioned for growth through the cycle." *See* Blue Wall's Website Home Page, Exhibit 15.

125.    The BLUE WALL fleet consists of eight (8) vessels listed on its company website: M/V BRAZEN; M/V COURAGEOUS; M/V DAUNTLESS; M/V FEARLESS; M/V AUDACIOUS; M/V DEFIANT; M/V INTREPID; and the M/V VIGOROUS. *See* Blue Wall's Fleet, Exhibit 16.

126.    Defendant BLUE WALL regularly holds itself out to the maritime industry and press as being the owning company which acquires, operates, and owns all vessels within the commonly managed and operated fleet. *See* Exhibit 17.

127.    George Gourdomichalis and Stathis Gourdomichalis acquired the vessels by raising equity to purchase the vessels and spent over $45 million dollars of that private equity on the M/V BRAZEN; M/V COURAGEOUS; M/V DAUNTLESS; and the M/V FEARLESS. *See* Press Release, Exhibit 17.

128.    The corporate organization and structure of BLUE WALL was coordinated

23

and organized by George Gourdmichalis and Stathis Gourdomichalis as a way to "tap the private equity market in order to try and raise capital from institution investors." *See* Stathis Gourdomichalis Transcript, Exhibit 4, at p. 16:11-18.

129.    The other "shareholders" of BLUE WALL are nothing more than financiers who held mortgages on the vessels in exchange for the capital they provided to BLUE WALL. *See* Stathis Gourdomichalis Transcript, Exhibit 4, at pp. 32:22 – 33:25.

130.    None of these financier shareholders and nominee directors for BLUE WALL have any practical, technical, and/or operational experience in vessel owning or management. *Id.*, at pp. 69:14 – 72:18.

131.    There are no records of anyone apart from George Gourdomichalis and/or Stathis Gourdomichalis (or others acting at their instructions) participating in any technical or operational decision on behalf of any of the BLUE WALL vessels. Specifically, there are no records of contemporaneous emails, minutes of meeting, inter-office memoranda, or text messages of such  decisions being taken by anyone other than George Gourdomichalis or Stathis Gourdomichalis.

132.    The private equity investments are a veiled and secretive security interest designed to disguise George Gourdomicalis' and Stathis Gourdomichalis' domination, control, and  ownership of the vessels in the BLUE WALL fleet while the individual shell companies maintain nominal "registered ownership" of the VIGOROUS and the other seven (7) vessels in the BLUE  WALL fleet. *See* Stathis Gourdomichalis Transcript, Exhibit 4, p. 90:2 – 25; *see also* Exhibit 22  (George Gouromichalis speaking at 11th Maritime Congress on Alternative Ship Financing  Arrangements).

133.    There is no record of anyone other than George Gourdomichalis and

Stathis Gourdomichalis participating in any operational and/or chartering decision for the M/V ADAMASTOS, the M/V VIGOROUS, and/or any other vessel owned through BLUE WALL.

134.    From the beginning, the desire and intention by George Gourdomichalis and Stathis Gourdomichalis was to have the entire BLUE WALL fleet subject to their technical, operational, and chartering control by and through a framework management agreement between PHOENIX SHIPPING and BLUE WALL. *See* Stathis Gourdomichalis Transcript, Exhibit 4, p. 98:12 – 99:13.

135.    Underscoring the fact that the shareholder/investors were signing up to provide financing for ships to be operated and controlled by George Gourdomichalis and Stathis Gourdomichalis, no one on the board of directors or shareholders ever objected to and/or commented on the entry of a ship management agreement between PHOENIX SHIPPING and any of the SPVs. *Id.*, at 99:11-18.

136.    In fact, it was a condition of the BLUE WALL corporate arrangement that PHOENIX SHIPPING would serve as the technical manager, commercial operator, holder of the Document of Compliance, and control each and every aspect of each Vessel and nominal SPV owner.

137.    Each vessel in BLUE WALL's fleet of eight (8) vessels is nominally owned by off- shore shell companies, which are dominated, operated, and controlled by George Gourdomichalis and Stathis Gourdomichalis directly and/or indirectly through PHOENIX SHIPPING.

138.    The respective registered owners of the eight (8) vessels include: Brazen Shipping & Trading S.A. as registered owner of the M/V BRAZEN; Courageous Shipping &

Trading S.A. as registered owner of the M/V COURAGEOUS; Dauntless Shipping & Trading S.A. as registered owner of the M/V DAUNTLESS; Fearless Shipping & Trading S.A. as registered owner of the M/V FEARLESS; Audacious Shipping & Trading S.A. as registered owner of the M/V AUDACIOUS; Defiant Shipping & Trading S.A. as registered owner of the M/V DEFIANT; Intrepid Shipping & Trading S.A. as registered owner of the M/V INTREPID; and Vigorous Shipping & Trading S.A. as registered owner of the M/V VIGOROUS. *See* Vessel Structure Chart, Exhibit 23.

139.    George Gourdomichalis is the President of all of the companies. *See* Stathis Gourdomichalis Transcript, Exhibit 4, at p. 45:16-19.

140.    Stathis Gourdomichalis is the Secretary and Treasurer of all of the companies. *See* Stathis Gourdomichalis Transcript, Exhibit 4, at pp. 44:20 - 45:11.

141.    Although each vessel in the fleet of BLUE WALL was registered in the name of an individual one-ship company, George Gourdomichalis and Stathis Gourdomichalis, directly and/or indirectly, by and through PHOENIX SHIPPING, BLUE WALL, and other off-shore entities beneficially own and operated these vessels as assets of a single business enterprise.

142.    The purported corporate independence of the respective vessel owners is simply fictitious, as they are entirely subjugated to business goals and practices of George Gourdomichalis and Stathis Gourdomichalis.

143.    BLUE WALL's address for public inquiries is "c/o Phoenix Shipping and Trading, 47-49 Akti Miaouli, 5th Floor, Piraeus, 18536." *See* Blue Wall's Contact Information, Exhibit 19.

144.    Although BLUE WALL's business is conducted by and through George

Gourdomichalis and Stathis Gourdomichalis at their PHOENIX SHIPPING office, BLUE WALL does not have a lease and/or otherwise does not pay rent and/or utilities to PHOENIX SHIPPING for the use of the office space. *See* Stathis Gourdomichalis Transcript, Exhibit 4, at p. 69:10-13.

145.   BLUE WALL does not have any independent telephone numbers, fax numbers, employees, or staff separate and apart from PHOENIX SHIPPING. *Id.*

146.   George Gourdomichalis is the Chief Executive Officer of BLUE WALL. *See* George Gourdomichalis Transcript, Exhibit 3, at p. 173:4-6.

147.   George Gourdomichalis serves as the CEO of BLUE WALL pursuant to a Service Agreement by and between BLUE WALL and George Gourdomichalis' wholly owned 'investment company' Defendant ALASTOR. *Id.*, at p. 188:18-23.

148.   Stathis Gourdomichalis is the Chief Operating Officer of BLUE WALL. *Id.*, at p. 173:7-9.

149.   Stathis Gourdomichalis serves as the COO of BLUE WALL pursuant to a Service Agreement by and between BLUE WALL and Stathis Gourdomichalis' wholly owned 'investment company' Defendant THALASSA. *See* Stathis Gourdomichalis Transcript, Exhibit 4, p. 54:20 – 55:5.

150.   George Gourdomichalis and Stathis Gourdomichalis are both on the board of directors for BLUE WALL and are the only "Class A" directors. *See* George Gourdomichalis Transcript, Exhibit 3, at p. 174:1-6.

151.   A "Class A" director is someone who is required to have shipping experience and technical and commercial management of vessels. *Id.*, at p. 174:7-12.

152.   George Gourdomichalis and Stathis Gourdomichalis are both listed as "Key

Men" who are required pursuant to the Articles of Incorporation of BLUE WALL to provide commercial operations and technical services to BLUE WALL by and through their roles as CEO and COO respectively and through their commercial operation and technical management of the BLUE WALL fleet of vessels by PHOENIX SHIPPING. *Id.*, at p. 178:5-17.

153.    George Gourdomichalis and Stathis Gourdomichalis, directly and/or indirectly through PHOENIX SHIPPING, dominate and control the operation of the entire BLUE WALL fleet of vessels. *Id.*, at p. 184:22 – 185:2.

    iv.  ***Vigorous Shipping & Trading S.A. and Fearless Shipping & Trading S.A.***

154.    VIGOROUS SHIPPING was incorporated in the Republic of Liberia in February 2014. *See* George Gourdomichalis Transcript, Exhibit 3, p. 199:20-25.

155.    FEARLESS SHIPPING was also incorporated int the Republic of Liberia.

156.    VIGOROUS SHIPPING and FEARLESS SHIPPING each have a registered address of 80 Broad Street, Monrovia, Liberia, a mail-box address that they share with all Liberian corporations. *See* Ship Management Agreement – Vigorous Shipping, Exhibit 20.

157.    While Defendants VIGOROUS SHIPPING and FEARLESS SHIPPING each have a listed and registered address in Liberia, they are simply off-shore "brass plate", shell companies possessing no active office space, employees, telephone numbers, fax numbers, and/or staff at this location. Instead, all company business is conducted by George Gourdomichalis and Stathis Gourdomichalis, directly and/or indirectly, by and through PHOENIX SHIPPING and BLUE WALL.

158.    VIGOROUS SHIPPING and FEARLESS SHIPPING have no physical office anywhere in the world and have never had a lease or otherwise paid rent for any office space in

Liberia or Greece. *Id*.

159.    VIGOROUS SHIPPING has never had any employees or office staff. George Gourdomichalis Transcript, Exhibit 3, p. 202:3-5.

160.    George Gourdomichalis is the President of VIGOROUS SHIPPING and a director of the company. *Id*., at pp. 200:25 – 201:5.

161.    Stathis Gourdomichalis was the Secretary and Treasurer of VIGOROUS SHIPPING and a director of the company. *Id*., at p. 201:6-11.

162.    George Gourdomichalis and Stathis Gourdomichalis hold the same officer and board of director positions in FEARLESS SHIPPING and each of the six (6) other shell company SPVs which nominally serve as the registered owners of the vessels in the BLUE WALL fleet. *Id*.

163.    PHOENIX SHIPPING entered into a Ship Management Agreement with VIGOROUS SHIPPING on February 14, 2014 to run all aspects of the M/V VIGOROUS and VIGOROUS SHIPPING's business, including all chartering, operations, crew management, hiring and firing of all shipboard staff, technical management, commercial management, insurance services, and accounting services for the M/V VIGOROUS. *See* Ship Management Agreement – Vigorous Shipping, Exhibit 20.

164.    The agreement was not negotiated at arms-length and is virtually identical to the services provided by PHOENIX SHIPPING and George Gourdomichalis and Stathis Gourdomichalis to ADAMASTOS SHIPPING. *Cf*. Exhibit 11 and Exhibit 20.

165.    The same type of ship management agreement is also in place between PHOENIX SHIPPING AND FEARLESS SHIPPING.

166.    VIGOROUS SHIPPING and FEARLESS SHIPPING, along with the six (6) other SPV entities has its mailing address at "c/o Phoenix Shipping and Trading, 47-49 Akti Miaouli,

5th Floor, Piraeus, 18536." *See* Equasis, Exhibit 18.

167.   PHOENIX SHIPPING maintains all of the corporate books, records, and financial records for VIGOROUS SHIPPING and FEARLESS SHIPPING.

168.   Even though the M/V VIGOUROUS is 'registered' to VIGOUROUS SHIPPING, in actuality, it is beneficially owned, operated, dominated and controlled by George Gourdomichalis and Stathis Gourdomichalis directly and indirectly by and through PHOENIX SHIPPING, BLUE WALL, and/or others acting at the instructions of George Gourdomichalis and Stathis Gourdomichalis.

169.   George Gourdomichalis and Stathis Gourdomichalis, by and through PHOENIX SHIPPING, hold the Document of Compliance for the VIGOROUS.

170.   The Office of the Deputy Commissioner of Maritime Affairs for the Republic of Liberia maintains copies of the first preferred mortgage for the M/V VIGOROUS, which connects the Defendants and the other vessel-owning entities and establishes George Gourdomichalis and Stathis Gourdomichalis as the beneficial owners of the M/V VIGOROUS. *See* Vigorous Mortgage, Exhibit 21.

171.   On December 30, 2014, VIGOROUS SHIPPING and mortgagee CIT Finance LLC entered into a first preferred mortgage agreement. *See* Exhibit 21.

172.   Under the loan agreement, VIGOROUS SHIPPING pledged its only asset, the M/V VIGOROUS, as collateral to secure a $24,150,000 loan for two (2) other entities, Brazen Shipping & Trading S.A. (hereinafter "BRAZEN") and Dashing Shipping & Trading S.A. (hereinafter "DASHING"), both of which are owned, operated, and controlled by George Gourdomichalis and Stathis Gourdomichalis, directly and/or indirectly through PHOENIX SHIPPING and/or BLUE WALL. *Id.*

173.   VIGOROUS SHIPPING, as collateral guarantor, agreed to guarantee all liabilities of BRAZEN and DASHING in the financial documents. *Id*. Such guarantee was given without compensation or an arms-length contract because VIGOROUS SHIPPING, just like all other single purpose entities in the BLUE WALL fleet, is owned, dominated, and/or controlled by George Gourdomichalis and Stathis Gourdomichalis.

174.   At the direction of George Gourdomichalis and Stathis Gourdomichalis, BLUE WALL guaranteed all liabilities of BRAZEN and DASHING in the financial documents as the "parent guarantor". *Id*.

175.   Pursuant to Schedule 1, Part A, of the mortgage agreement, VIGOROUS SHIPPING, BLUE WALL, and borrowers BRAZEN and DASHING reflect that the address for all communications is "c/o Phoenix Shipping and Trading, 47-49 Akti Miaouli, 5th Floor, Piraeus, 18536." *Id*.

176.   Even though the M/V FEARLESS is 'registered' to FEARLESS SHIPPING, in actuality, it is beneficially owned, operated, dominated and controlled by George Gourdomichalis and Stathis Gourdomichalis directly and indirectly by and through PHOENIX SHIPPING, BLUE WALL, and/or others acting at the instructions of George Gourdomichalis and Stathis Gourdomichalis.

177.   George Gourdomichalis and Stathis Gourdomichalis, by and through PHOENIX SHIPPING, hold the Document of Compliance for the FEARLESS.

178.   The Office of the Deputy Commissioner of Maritime Affairs for the Republic of Liberia maintains copies of the first preferred mortgage for the Defendants other vessels which connects  the Defendants and the other vessel-owning entities.

179.   The First Preferred Mortgage for the M/V AUDACIOUS identifies a Loan

Agreement dated June 18, 2014 between: Courageous Shipping & Trading S.A., Dauntless Shipping & Trading S.A., Defiant Shipping & Trading S.A., Fearless Shipping & Trading S.A., and Intrepid Shipping & Trading S.A., as joint and several borrowers from Joh. Berenberg, Gossler & Co. KG for a loan facility of $30,000,000. *See* Exhibit 25.

180.    This mortgage and loan facility further establishes George Gourdomichalis and Stathis Gourdomichalis as the beneficial owners of the M/V FEARLESS. *See* Exhibit 26.

181.    All notice communications to any of the six (6) brass-plate shell companies, including FEARLESS SHIPPING were to be made c/o PHOENIX SHIPPING with attention to Mr. Stathis Gourdomichalis, with the address on the Akti Miaouli in Piraeus Greece. *Id.*, at p. 55.

182.    A supplemental agreement amending the Loan Agreement entered into on April 1, 2016 was signed by George Gourdomichalis on behalf of each of six (6) brass-plate shell companies, including FEARLESS SHIPPING.

183.    BLUE WALL, at the direction of George Gourdomichalis and Stathis Gourdomichalis, regularly cross-guarantee and collateralize each of the single purpose entities that it owns and controls not for the benefit of the individual vessel owning company, but for the benefit of themselves through their various shell companies.

184.    The Defendants individually and/or collectively are part of a single business enterprise disguised as separate business entities, but in actuality are dominated and controlled by George Gourdomichalis and Stathis Gourdomichalis by and through PHOENIX SHIPPING, BLUE WALL, ALASTOR, THALASSA and other nominal off-shore shell companies.

185.    The finances and business activities of Defendants are so intertwined, and at the subject and control of George Gourdomichalis and Stathis Gourdomichalis that there exists such a unity of ownership and interest between them that no genuine separation exists.

186.     All Defendants were, at all relevant times, operated, dominated, controlled, and managed by George Gourdomichalis and Stathis Gourdomichalis by and through their various shell entities, which results in an intermingled web of companies doing business as one (1) single economic enterprise that disregards all corporate formalities.

187.     Though Defendants comprise nominally separate corporate business / legal entities, their ownership and control is so intertwined and fused that they are only distinct from one another as a matter of pro forma paperwork; not in the functional and actual ways in which the companies are dominated and controlled by George Gourdomichalis and Stathis Gourdomichalis.

188.     This blatant disregard for separate and distinct corporations and dominion by common officers, managers, and directors demonstrates that the Defendants are mere alter egos of each other and subject to the dominion and control of George Gourdomichalis and Stathis Gourdomichalis by and through their various shell companies including PHOENIX SHIPPING, ALASTOR, THALASSA, and BLUE WALL.

**b.       Fraud in the Underlying Transaction**

189.     Defendants   PHOENIX   SHIPPING,   George   Gourdomichalis,   Stathis Gourdomichalis, and ADAMASTOS SHIPPING knew that ADAMASTOS SHIPPING was not adequately capitalized at the time the company was formed and throughout their operation of the Vessel. *See* George Gourdomichalis Transcript, Exhibit 3, at p. 238:24 – 239:1.

190.     Defendants   PHOENIX   SHIPPING,   George   Gourdomichalis,   Stathis Gourdomichalis, and ADAMASTOS SHIPPING knew that ADAMASTOS SHIPPING had very limited cash on hand and no reserve to pay for any costs, fees, and/or expenses which might necessarily arise with a Vessel. *Id.*, at p. 105:6-24.

191.     Defendants   PHOENIX   SHIPPING,   George   Gourdomichalis,   Stathis

33

Gourdomichalis, and ADAMASTOS SHIPPING knew that ADAMASTOS SHIPPING had stopped paying the $18,000 per month management fee and other amounts due and owing pursuant to the Ship Management Agreement. *See* Stathis Gourdomichalis Transcript, Exhibit 4, at pp. 60:12-61:7; p. 82:2-6.

192.    The ADAMASTOS SHIPPING bank account had a mere $6,453.47 in March of 2014, *i.e.* right before the Vessel was chartered to Plaintiff PACIFIC GULF. See Stathis Gourdomichalis Transcript, Exhibit 4 at pp. 97:14 – 98:1.

193.    Defendants PHOENIX SHIPPING, George Gourdomichalis, Stathis Gourdomichalis, THALASSA, and ADAMASTOS SHIPPING knew that THALASSA made several payments for and on behalf of ADAMASTOS SHIPPING to PHOENIX SHIPPING totaling $52,100.00. *Id.*, at p. 95:17 – 96:13; *see also* Berenberg Bank Statement of PHOENIX SHIPPING, Exhibit 24.

194.    Payments were not loans, were not recorded in writing, and there was no obligation for THALASSA to make such payments for and on behalf of ADAMASTOS SHIPPING to PHOENIX SHIPPING. The payment(s) were made solely because George Gourdomichalis and Stathis Gourdomichalis dominate and control all of the Defendants.

195.    Defendants PHOENIX SHIPPING, George Gourdomichalis, and Stathis Gourdomichalis used their domination and control over Defendant ADAMASTOS SHIPPING to enter into a charter party agreement with Plaintiff PACIFIC GULF, despite knowledge that the Vessel was unseaworthy, was not fit for its intended purpose, and was not in compliance with international regulations and requirements. *See* Exhibit 1; *see* George Gourdomichalis Transcript, Exhibit 3; p. 147:20 – 148:3.

196.    Despite the clear undercapitalization and failure by Defendants to run a financially

sound or solvent vessel, George Gourdomichalis, directly and/or indirectly through PHOENIX SHIPPING, negotiated the charter of the M/V ADAMASTOS with Plaintiff PACIFIC GULF on April 8, 2014.

197.   Despite the fact that George Gourdomichalis, Stathis Gourdomichalis, and PHOENIX SHIPPING knew that the Vessel was deteriorating, knew that the Vessel and ADAMASTOS SHIPPING were undercapitalized, and knew that the ADAMASTOS SHIPPING bank account did not have adequate funds, Defendants failed, neglected and/or refused to provide  any warning to PACIFIC GULF of the unseaworthy nature of the Vessel and fraudulently permitted the charterers and cargo interests to load a high value cargo of soyabeans onboard.

198.   Defendants PHOENIX SHIPPING, George Gourdomichalis, Stathis Gourdomichalis, and ADAMASTOS used these false representations to their own advantage in  order obtain Plaintiff's business and to earn **$1,114,365** in charter hire.

199.   Plaintiff would not have contracted for the use of the M/V ADAMASTOS absent these material misrepresentations by the Defendants that the Vessel was, among other warranties and guarantees contained in the charter party agreement, a seaworthy vessel that was fit for its  intended purpose and in compliance with all international regulations, laws, and requirements.

200.   Defendants George Gourdomichalis, Stathis Gourdomichalis, and PHOENIX SHIPPING for their own benefit and the fraudulent benefit of the remaining vessels within the BLUE WALL fleet, including the M/V FEARLESS, purposefully failed, neglected, and/or  refused to satisfy the claims against the M/V ADAMASTOS in Brazil and instead abandoned the vessel, leaving Plaintiff PACIFIC GULF to deal with the claims from cargo

owners and sub- charterers which are no less than $19,296,671.50, plus applicable interest, costs, and fees.

201.    Defendants George Gourdomichalis, Stathis Gourdomichalis, and PHOENIX SHIPPING now intend to own and operate their remaining vessels, including the M/V FEARLESS with impunity, as it attempts to hide behind the sham company FEARLESS SHIPPING, without providing Plaintiff payment or security for the damages caused by Defendants through their domination, control, and abuse of the M/V ADAMASTOS to commit a wrong which has caused Plaintiff significant injuries and damages.

## COUNT III – SUCCESSOR LIABILITY

202.    PACIFIC GULF restates and re-alleges paragraphs 1 – 201 in the above foregoing Verified Complaint as if set forth herein.

203.    BLUE WALL, VIGOROUS SHIPPING, FEARLESS SHIPPING (as well as the other six (6) one-ship company entities and subsidiaries of BLUE WALL), by and through PHOENIX SHIPPING and individual Defendants, George Gourdomichalis and Stathis Gourdomichalis, comprise successor corporate business entities of, *inter alia*, ADAMASTOS SHIPPING.

204.    The Defendants BLUE WALL,VIGOROUS, and FEARLESS: a) occupy and carry on business from the same business premises as ADAMASTOS SHIPPING, *i.e.* the offices of George Gourdomichalis and Stathis Gourdomichalis at PHOENIX SHIPPING; b) they transact their business by and through substantially identical personnel; c) share common officers and directors, *i.e.* the Gourdomichalis brothers; d) have the same financing banks financing their business and bank accounts; e) have a continuity of the same principal, controlling shareholders who make decisions for the companies, *i.e.* George Gourdomichalis and Stathis Gourdomichalis;

f) there is a continuity of general business operations through PHOENIX SHIPPING including the same insurers The American Club and same accountants Moore Stephens; and g) there is continuity of assets to the new single purpose entities by and through PHOENIX SHIPPING.

205.    Notwithstanding the purported difference in the companies, the commercial, technical, and chartering operations of BLUE WALL, VIGOROUS SHIPPING, FEARLESS SHIPPING, and the other single vessel owning offshore shell companies and their Vessels, are performed by the same Key Men and the same employees working out of the same PHOENIX SHIPPING office which owned, dominated, controlled, and operated ADAMASTOS SHIPPING, all at the direction, domination, and control of George Gourdomichalis and Stathis Gourdomichalis.

206.    The Defendants have in common key management personnel and all management decisions are conducted through George Gourdomichalis and Stathis Gourdomichalis.

207.    Defendants BLUE WALL, VIGOROUS SHIPPING, FEARLESS SHIPPING and the remaining offshore shell companies within the BLUE WALL fleet are a mere continuation of the business of ADAMASTOS SHIPPING, by and through George Gourdomichalis, Stathis Gourdomichalis, and PHOENIX SHIPPING, as evidenced by the common identity of assets, location, management, personnel, control, stockholders, service providers, accountants, and insurers.

208.    Both the M/V ADAMASTOS and the M/V FEARLESS were entered for P&I insurance with the American Club. A member-based protection and indemnity club for which George Gourdomichalis has sat on the Board of Directors since 2004. George Gourdomichalis has been on the American Club Board of Directors as a representative of PHOENIX SHIPPING since 2012 and is currently the Chairman of the Board.

209.   The Defendants, together with the American Club, negligently, maliciously, corruptly, and improperly conspired, confederated, and agreed to abandon the M/V ADAMASTOS in Brazil and failed, neglected, and/or refused to pay the Cargo Claim which is rightly due and owing to Plaintiff and for which Defendants have no defense.

210.   In addition, all of the Defendants and other off-shore shell entities have their accounting and auditing services performed by the same company, Moore Stephens.

211.   Accordingly, BLUE WALL and the one-ship-companies it holds, including VIGOROUS SHIPPING, are liable for Plaintiff's claims as the successor corporations of ADAMASTOS SHIPPPING and the M/V VIGOROUS may be attached as security for Plaintiff's claims.

## IV.  APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

212.   PACIFIC GULF restates and re-alleges paragraphs 1 – 211 in the above foregoing  Verified Complaint.

213.   Plaintiff's claim against Defendants for breach of the charter party agreement is a  maritime claim. This is an ancillary proceeding to secure jurisdiction and security over Defendants.

214.   Defendants are not present and cannot be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. *See* Affidavit of Attorney Briton P. Sparkman, Exhibit 32. Notwithstanding, the Defendants have  within the District tangible personal property comprised of the M/V FEARLESS,  IMO  No.  9228265, which is subject to attachment as security for PACIFIC GULF's claims.

215.    Interest, costs, and attorney's fees are routinely awarded to the prevailing party under English Law and the procedural rules of London arbitration. It is standard for interest to be awarded to the prevailing party in the amount of 5.0%, compounded quarterly. *See Exhibit 2, pgs. 21-23.*

216.    PACIFIC GULF expects to recover the following amounts in arbitration from Defendants:

| | | |
|---|---|---|
| A. | Principal Claim | $18,500,000.00 |
| B. | Estimated Interest for Principal Claim: 3 *years at 5.0 %, compounded quarterly* | $2,973,958.58 |
| C. | Arbitration Cost: | $7,100.00 |
| D. | Estimated Attorney's Fees: | $1,000,000.00 |
| | **TOTAL:** | **$22,481,058.58** |

217.    Therefore, PACIFIC GULF's total claim for breach of the charter party, plus applicable interest, costs, and fees in the aggregate estimated to be no less than **$22,481,058.58**.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff prays as follows:

A.    That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants be cited to appear and answer the allegations of this Verified Complaint;

B.    That if Defendants cannot be found within this district, then all of their respective tangible or intangible property within this district, including M/V FEARLESS, her engines, boilers, tackle, apparel, and all necessary appurtenances thereto, as well as debts, credits, or effects including but not limited to accounts, checks, disbursement advances, payments, property on board the M/V FEARLESS, owned by the said Defendants or in the hands or control of persons named as garnishees in the Process of Maritime Attachment and

Garnishment be attached and seized pursuant to Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

        C.      That a judgment be entered against the Defendants in the sum of **$22,481,058.58** and the proceeds of the assets attached be applied in satisfaction thereof;

        D.      That the Plaintiff have such other, further, and different relief as the Court deems just, proper, and equitable.

Respectfully submitted,

Dated:      March 25, 2019          CHALOS & CO, P.C.
              Houston, Texas

By: _____
                    George M. Chalos
                    SDTX Federal Id No. 623727
                    Briton P. Sparkman
                    SDTX Federal Id No. 1148116
                    Margaret L. Manns
                    SDTX Federal Id No. 24091010
                    7210 Tickner Street
                    Houston, TX 77055
                    PH: (713) 574-9582
                    FX: (866) 702-4577