**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

```
-------------------------------------------------x
```
PACIFIC GULF SHIPPING CO.,         :
                                      :
                    Plaintiff,     :     CIVIL ACTION NO. H-19-CV-727
                                        :
               v.               :     IN ADMIRALTY
                                        :
ADAMASTOS SHIPPING & TRADING  :
S.A., VIGOROUS SHIPPING & TRADING :
S.A., FEARLESS SHIPPING & TRADING  :
S.A.,  BLUE WALL SHIPPING LTD.,  :
PHOENIX SHIPPING & TRADING S.A.,  :
THALASSA HOLDINGS S.A.,          :
ALASTOR MARINE S.A., GEORGE     :
GOURDOMICHALIS, and EFSTATHIOS  :
GOURDOMICHALIS,              :
                                        :
                    Defendants.  :
```
-------------------------------------------------x
```

### PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

**COMES NOW**, Plaintiff, PACIFIC GULF SHIPPING CO. (hereinafter "Plaintiff" or

"Pacific Gulf"), by and through undersigned counsel, and respectfully submits this Response in

Opposition to Defendant FEARLESS SHIPPING & TRADING S.A.'s (hereinafter "Fearless")

Motion to Dismiss[1] (Doc. 67) and Defendant BLUE WALL SHIPPING LTD.'s (hereinafter "Blue

Wall") motion to join the application (Doc. 68).  For the reasons more fully set forth below, the

factual allegations contained in Plaintiff's First Amended Verified Complaint (Doc. 54), and what

---

[1] Although styled as a Rule 12(b) Motion to Dismiss, the motion represents Fearless' **fourth** brief challenging the attachment in this case.  In the companion action pending in the District of Oregon, 18-cv-2076 *Pacific Gulf Shipping Co. v Adamastos Shipping & Trading, S.A., et al*., another shell company within the Blue Wall fleet, Vigorous Shipping & Trading, S.A. has lodged at least three (3) other challenges to the attachment in that action.  All of the Defendants' requests to vacate the attachments and/or dismiss the complaints have been denied.

may be added at oral argument, it is respectfully submitted that Defendants' latest motion to dismiss is without merit and should be denied in its entirety.

Plaintiff has exceeded the pleading requirements to demonstrate that this Court has subject matter jurisdiction over the dispute and *quasi-in-rem* jurisdiction over the Defendants through the attachment of property belonging to the Defendants located within the Southern District of Texas, namely the M/V FEARLESS. Reasonable grounds clearly exist to sustain Plaintiff's attachment by and through Plaintiff's alter-ego and/or successor liability allegations against Defendants Blue Wall, ADAMASTOS SHIPPING & TRADING S.A. (hereinafter "Adamastos Shipping"), PHOENIX SHIPPING & TRADING S.A. (hereinafter "Phoenix Shipping"), THALASSA HOLDINGS S.A. (hereinafter "Thalassa"), ALASTOR MARINE S.A. (hereinafter "Alastor"), GEORGE GOURDOMICHALIS (hereinafter "George Gourdomichalis"), and EFSTATHIOS GOURDOMICHALIS (hereinafter "Stathis Gourdomichalis") (collectively the "Defendants").

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff commenced this ancillary Rule B maritime attachment action on February 27, 2019, seeking an order authorizing attachment of the M/V FEARLESS to obtain security and to enforce its foreign arbitration award issued on April 19, 2017. Doc. 1, at ¶¶ 34-30; *see also* First Amended Complaint filed March 25, 2019 at Doc 54. Pacific Gulf alleged a valid *prima facie* maritime claim against Defendant Adamastos Shipping for the breach of the charter party agreement as a result of the abandonment of the M/V ADAMASTOS in Brazil in August 2014. *Id.*, at ¶¶ 12-39. Defendants' breached their obligations under the charter party agreement, failed to deliver a cargo of perishable soyabean cargo as was required under the contract, and ultimately abandoned the M/V ADAMASTOS in Brazil, leaving Plaintiff with damages, costs, interest, and expenses totaling over $22.4 million dollars. *Id.*, at ¶ 216. Pacific Gulf's First Amended Verified

Complaint presents robust, substantive alter-ego and successor corporation allegations, which detail the complex series of shell companies which are dominated and controlled by George Gourdomichalis and Stathis Gourdomichalis, both directly and indirectly, through the use of nominal, offshore brass plate companies including Adamastos Shipping, Fearless Shipping, Phoenix Shipping, Thalassa, Alastor, Blue Wall, and the other single purpose shell companies connected to the fleet of vessels nominally held through Blue Wall. *Id*., at ¶¶ 55-211.

In the companion action pending before District Judge Mosman in the District of Oregon, extensive briefing was filed and two Rule E(4)(f) hearings were held to address the sufficiency of Plaintiff's alter-ego allegations. In that matter, Chief District Judge Mosman repeatedly (and correctly) denied the Defendants' application holding:

> But I feel, under the totality of the circumstances, that I am obligated to look at the interlocking sort of nest of relationships among all of these corporations and actors, and in that vein, ***there are many other important troubling pieces of evidence to show a lack of observance of corporate formalities and control by individual actors of corporations such that they shouldn't be accorded the status of corporate liability protection***. And those create circumstantial evidence that the whole scheme is one in which corporate formalities are being used by individual actors to exercise control without full liability. ***And so I deny the motion to vacate and intend to move this case forward to resolution fully on the merits as soon as possible***.

*See* **Exhibit 1**, January 23, 2019, Hearing, Tr. p. 31:11-24. (emphasis added).

Dissatisfied with the denial of the motions to vacate in Oregon, Defendants continue to file serial (fruitless) motions to vacate and dismiss in this matter. Following multiple rounds of briefing and three (3) hearings on Fearless Shipping's motion to vacate pursuant to Supplemental Rule E(4)(f) (which was correctly denied on March 19, 2019 (Doc. 50)),[2] Defendant is now seeking another bite at the proverbial apple. Defendants' latest motion pursuant to Fed. R. Civ. P. Rule

---

[2] Fearless Shipping's Motion for Reconsideration (Doc. 51) of the March 19, 2019 Order remains *sub judice*.

12(b) to dismiss the complaint is neither supported by the facts or applicable law.  Doc. 67, 68.
The pending motion is a re-hash and re-argument of legal and factual issues challenging the
sufficiency of Plaintiff's pleadings.  Arguments which have already been considered and correctly
rejected (repeatedly) by this Court and District Judge Mosman in the District of Oregon applying
the higher probable cause standard during the Rule E(4)(f) motion to vacate phase of the litigation.

## ARGUMENT

### A.    FIFTH CIRCUIT CASE LAW REQUIRES PLAINTIFF BE GRANTED DISCOVERY PRIOR TO DISMISSAL BASED ON A CHALLENGE TO THE JURISDICTION OF THE COURT

For the reasons more fully set forth below[3], Plaintiff's First Amended Complaint satisfies
all of the necessary pleading requirements to defeat Defendant's motion to dismiss.
Notwithstanding, the Fifth Circuit Court of Appeals is clear that the Plaintiff **must** have ample
opportunity to secure and present evidence relevant to any jurisdictional question(s) before a court
may dismiss a complaint. *Box v. Dallas Mexican Consulate Gen.*, 487 F. App'x 880, 884 (5th Cir.
2012) (citing *Hansen v. PT Bank Negara Indon.*, 601 F.3d 1059, 1063-64 (10th Cir. 2010)); *see
also, e.g., Toys R Us., Inc. v. Step Two*, 318 F.3d 446, 456 (3d Cir. 2003) (affirming the principle
that "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's
claim is clearly frivolous" and collecting cases so concluding); *Raccoon Recovery, LLC v. Navoi
Mining & Metallurgical Kombinat*, 244 F. Supp. 2d 1130, 1141 (D. Colo. Aug. 14,
2002); *McAllister v. FDIC*, 87 F.3d 762, 766 (5th Cir. 1996) ("When a district court makes factual
determinations decisive of a motion to dismiss for lack of jurisdiction, it must give plaintiffs an
opportunity for discovery and a hearing that is appropriate to the nature of the motion to dismiss");
*see also ING Bank N.V. v. M/V Portland*, 2016 U.S. Dist. LEXIS 78495, *27-28 (M.D. La. June

---

[3] Points B-E, *infra*.

4

16, 2016).

In the present litigation, documentary discovery is still ongoing and responses to Plaintiff's requests for production were just received from Blue Wall and Vigorous Shipping within the past week. Defendants and Plaintiff are working to set a schedule for depositions of witnesses at a mutually convenient date and time later this summer. Moreover, the parties have agreed that discovery taken in the companion Oregon action may be utilized in this matter. Pursuant to an Amended Case Management Schedule issued by District Judge Mosman on Friday May 24, 2019, fact discovery is to be completed on or before September 20, 2019. Plaintiff respectfully submits that the jurisdictional challenges raised by the Defendants in this action are premature and cannot be resolved by the Court without an opportunity for Plaintiff to complete discovery. It is respectfully submitted that this Court should deny Defendants' motion to dismiss in its entirety. However, in the unlikely event that this Court finds that one of Defendants' arguments could be grounds for dismissal due to a lack of jurisdiction, it is respectfully submitted that this Court must grant Plaintiff an opportunity to conduct necessary discovery to supplement the Verified Complaint and respond to the jurisdictional challenge.

**B.      THE RULE B ATTACHMENT OF THE M/V FEARLESS DEFEATS THE DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.**

Defendants Fearless and Blue Wall frivolously allege that the present action must be dismissed because there is no personal jurisdiction over Defendant Adamastos Shipping; and therefore, there can be no recognition and enforcement of a foreign arbitral award. *See* Doc. 67, pp. 4-6. However, the cases cited by Defendants fail to take into account the distinction between cases which are commenced simply to recognize and enforce foreign arbitral awards and those which were commenced under the district court's admiralty jurisdiction pursuant to Supplemental Rule B. It is hornbook admiralty law that there is no requirement for personal jurisdiction over a

defendant where *quasi-in-rem* jurisdiction exists, *i.e.*, the "attachment or other seizure of property when the court has no jurisdiction over the person of the defendant, but has jurisdiction over a thing belonging to him or over a person who is indebted to, or owes a duty to the defendant." *Belcher Co. of Alabama, Inc. v. M/V Maratha Mariner*, 724 F.2d 1161, 1163-1164, (5th Cir. 1984).

Courts in the Fifth Circuit Court of Appeals have subsequently refined the understanding of *quasi-in-rem* jurisdiction in circumstances where an *in personam* claim is instituted by way of a complaint containing a prayer for process to attached the defendant's property found within the district. In such circumstances, as here, Courts have held that a more precise understanding of *quasi-in-rem* jurisdiction is that "**a good-faith allegation in the complaint that the *res* is present within the geographical jurisdiction of the court is the jurisdictional fact which gives the court *in personam* jurisdiction over the defendant purported to own the *res***." *Argo Dredging, L.L.C. v. 1990 IMS Model Dredge*, 2007 U.S. Dist. LEXIS 63225, at *2 (S.D. Miss. Aug. 27, 2007)(emphasis added) (quoting *Great Prize, S.A. v. Mariner Shipping Pty., Ltd*., 967 F.2d 157, 159-160, 1993 AMC 72 (5th Cir. 1992)). Courts have repeatedly held that *quasi in rem* jurisdiction over property belonging to defendants is sufficient to establish jurisdiction for the purpose of recognizing and enforcing a foreign arbitration award under the New York Convention. *See, e.g.*, *First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 750, 2012 U.S. App. LEXIS 26207, *17 (citing with approval *Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Rep*., 582 F.3d 393, 397-98 (2d Cir. 2009) (confirmation proceeding under New York Convention requires personal or *quasi in rem* jurisdiction over parties)); *CME Media Enters. B.V. v. Zelezny*, 2001 U.S. Dist. LEXIS 13888, *15 (S.D.N.Y. Sept. 10, 2001) (*quasi in rem* jurisdiction established through the existence of and attachment of property in the district which provides the basis for jurisdiction over defendants).

Plaintiff has easily established jurisdiction over **all** of the Defendants through the attachment of property within the District, *i.e.* the M/V FEARLESS, which Plaintiff has sufficiently and properly alleged is property belonging to all of the named Defendants through a theory of alter-ego and/or successor liability. *See, e.g.*, *Naftomar Shipping & Trading Co. v. KMA Int'l S.A.*, 2011 U.S. Dist. LEXIS 24723, at *5-8 (S.D. Tex. Mar. 10, 2011) (confirming that an attached vessel which was claimed as property belonging to a defendant that was not a signatory to the underlying charter party dispute could nevertheless remain under attachment based on plaintiff's factual allegations and showing that reasonable grounds in support of the theory of alter-ego liability existed between the defendants)(citing *A. Coker & Co., LTD. v. Nat'l Shipping Agency Corp., et al.*, 1999 U.S. Dist. LEXIS 7442, 1999 WL 311941, at *1 (E.D. La., May 17, 1999)). The purposes of the attachment power historically have been to gain jurisdiction over absent defendants and to ensure satisfaction of judgments. *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 693, 70 S. Ct. 861, 94 L. Ed. 1206 (1950). This is exactly what Plaintiff has done in this case, Defendants' reliance on non-maritime, non-attachment cases in support of its argument that this case must be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(2) is inapplicable and without merit.

     **C.    THE SECOND CIRCUIT'S DECISION IN *ORION* IS NOT APPLICABLE TO THE PRESENT DISPUTE.**

Defendants' motion to dismiss relies exclusively upon a 1963 decision from the Second Circuit Court of Appeals, *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp*., 312 F.2d 299, 1963 U.S. App. LEXIS 6394 (2d Cir. 1963). As begrudgingly acknowledged by Defendant, the *Orion* decision is not controlling precedent over this Court. The decision similarly fails as persuasive authority because the facts and procedural nature of that case are completely different and easily distinguishable from this action. The *Orion* case presented a very narrow set

of facts and an extremely limited legal holding addressing the scope of an arbitration tribunal's authority and a court's power to review an arbitral award. No such issue is present here. In *Orion*, the arbitrator had ruled that a non-signatory to the underlying contract, Signal, was liable as guarantor of plaintiff's contractual obligations. *Id*. at 300. The district court refused to recognize that portion of the arbitration award on the basis that the arbitrator had exceeded his authority in issuing an award against a party that was not a signatory to the contract and arbitration clause. During the litigation to recognize and confirm the award, the plaintiff argued that despite the overstep of the arbitrator's authority, the court could nevertheless confirm the award against the contractual party Eastern Panama and also make Signal liable, since Eastern Panama was merely a shell and alter-ego to Signal. *Id*. at 301. The Second Circuit ruled:

> It may well be, as Judge Dawson indicated below, that Eastern Panama is thoroughly dominated by Signal, and that Signal is properly accountable on an 'alter ego' theory. But we hold that an action for confirmation is not the proper time for a District Court to 'pierce the corporate veil.' The usual officer of the confirmation action under 9 U.S.C. § 9 is simply to determine whether the arbitrator's award falls within the four corners of the dispute as submitted to him. This action is one where the judge's powers are narrowly circumscribed and best exercised with expedition. It would unduly complicate and protract the proceeding were the court to be confronted with a potentially voluminous record setting out details of the corporate relationship between a party bound by an arbitration award and its purported 'alter ego'.

*Id*. The *Orion* case presented only a **single** ground for jurisdiction by the federal court, namely the recognition and enforcement of a foreign arbitral award. *Id*. at * 301. It was on that ground that the Second Circuit ruled that the confirmation action was limited and improper to address issues of "alter-ego" liability as beyond the scope of the court's authority.

Notwithstanding, the Second Circuit's decision in *Orion* does not stand for the principle that a party may not pursue a claim for alter-ego liability simply because it may be seeking to recognize and enforce an arbitration award. This is especially true in circumstances such as this

where the is an independent basis for subject matter jurisdiction to seek recovery from an alter-ego defendant. As the Second Circuit Court of Appeals explained:

> [O]ur holding does not preclude Orion from prosecuting its action, still pending, against Signal as guarantor of Eastern Panama's obligations. ***Nor does it preclude Orion from bringing a separate action against Signal to enforce the award against Eastern Panama, invoking the 'alter ego' theory***. But an action to confirm the arbitrator's award cannot be employed as a substitute for either of these two quite distinct causes of action."

*Id*. at 302 (emphasis added).

Plaintiff's First Amended Verified Complaint presents comprehensive factual allegations in support of its claims of corporate veil piercing and/or successor liability against Defendants Fearless Shipping, Blue Wall, and other named Defendants all of which are distinct from Plaintiff's claim to recognize and enforce the arbitration award pursuant to the New York Convention (9 U.S.C. § 204). *See* First Amended Complaint, Doc. 54, at ¶ 1. Plaintiff's claims for alter-ego and successor liability against the Defendants have an independent basis for the exercise of subject matter jurisdiction of the Court, *i.e.* the Court's maritime and admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and the procedural remedy permitted through Supplemental Rule B.

Tellingly, Fearless Shipping has not cited to a ***single*** case in support of its motion involving an admiralty Rule B attachment case which followed the holding in *Orion* in this Circuit (or any other Circuit). There is none. This is because the very purpose of Rule B attachment is to serve as an ancillary action to obtain both security and jurisdiction over defendants in support of foreign arbitrations. *See Swift & Co.*, *supra*. Rule B permits a plaintiff to assert personal jurisdiction over a defendant who cannot be found within the district through attachment of his property or garnishment of a debt owed to him. Fed. R. Civ. P. Supp. R. B(1)(a).

In order for a Rule B attachment to issue, the plaintiff must have "a valid *prima facie* admiralty claim against the defendant." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460

F.3d 434, 445 (2d Cir. 2006) (abrogated on other grounds *Shipping Corporation of India Ltd. v. Jaldhi Overseas Pte Ltd.,* 585 F.3d 58 (2d Cir. 2009)). "[A] district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." *Id.*; *see also* Fed. R. Civ. P. Supp. R. E(4) (f). As previously addressed in Plaintiff's prior pleadings, there is a valid *prima facie* admiralty claim pending against the defendants in this matter and as such, Fearless' reliance upon *Orion* is misplaced and fails as a matter of fact and law. *See* e.g., Doc. 22, 36, and 53.

The case *Cargill, Inc. v. Clark*, No. 10-487-JJB, 2011 U.S. Dist. LEXIS 120181 **5 (M.D. La. Oct. 18, 2011), as cited and relied upon by Defendants in the motion to dismiss, is the only case in the Fifth Circuit District Court to directly apply *Orion*. In that matter, District Judge Brady of the Middle District of Louisiana initially cited *Orion* for the proposition that "actions for confirmation of arbitration proceedings are not the proper time to pierce the corporate veil." However, in a subsequent decision in the same case issued on December 10, 2012 (which was egregiously omitted from Defendants' briefing), the Court <u>granted</u> plaintiff Cargill, Inc.'s motion for summary judgment against defendants Brett Michael Clark ("Clark"), Clark Farm #2, LLC ("Clark Farm"), and Bayou Current Farms, LLC ("BC Farms") and denied the defendants' motion to dismiss. *Id.*, at Doc. 39; *see* copy of Judge Brady Ruling attached hereto as **Exhibit 2**. The Court further held that the once the complaint was amended to include alter-ego allegations against defendants Clark and BC Farms, *Orion* was inapposite. Judge Brady found that plaintiff's claim to pierce the corporate veil and enforce the arbitration awards against the alleged alter-ego defendants could proceed. *Id.* Ultimately, the court ruled that there were no material facts in dispute, granted the motion for summary judgment in favor of Plaintiff, pierced the corporate veil

finding Clark liable for the actions of Clark Farm <u>and</u> BC Farms and determined that the arbitration awards could be enforced against <u>all</u> defendants. *Id*.[4]

Plaintiff's First Amended Verified Complaint includes claims for the recognition and enforcement of the foreign arbitral award, as well as causes of action for piercing the corporate veil and successor liability under this court's admiralty and maritime jurisdiction. *See* First Amended Complaint, at Counts II, III, and IV. Courts have repeatedly held that where the claim for alter-ego was separately plead and the basis for subject matter jurisdiction is independent of the motion to confirm a foreign arbitration award, as is here, the requirements of *Orion* (*i.e.* – the commencement of a separate action) had been met. *See e.g., Sea Eagle Maritime Ltd. v. Hanan International, Inc.*, 1985 U.S. Dist. LEXIS 13923, at *2 (S.D.N.Y. Nov. 14, 1985) (then District Judge Leval held that a claim to pierce the corporate veil could be construed as a separate action); *District 15, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Numberall Stamp and Tool Co., Inc.*, 1987 U.S. Dist. LEXIS 12736, No. 85 Civ. 8561, 1987 WL 19285 (S.D.N.Y. Oct. 28, 1987).

**D**. **PLAINTIFF HAS PLED SUFFICIENT FACTUAL ALLEGATIONS IN THE FIRST AMENDED COMPLAINT REQUIRING DEFENDANTS, THE MOTION TO DISMISS MUST BE DENIED IN ITS ENTIRETY.**

There is no dispute that Federal Courts sitting in admiralty "can pierce the corporate veil of a corporation in order to reach the 'alter egos' of the corporate defendant directly involved." *Talen's Landing, Inc. v. M/V Venture, II*, 656 F.2d 1157, 1160 (5th Cir. 1981) (citing *Swift & Co.*

---

[4] Defendants' reliance upon the District of Maryland decision, *Frontenac Intern., S.A. v. Glob. Mktg. Sys.*, 2013 U.S. Dist. LEXIS 82340 (D. Md. June 11, 2013), is similarly misplaced. In that action, the district court specifically acknowledged that there were exceptions to the *Orion* rule in circumstances in which the Plaintiff had a basis for personal jurisdiction over the defendants and had plead a separate ground for subject matter jurisdiction (such as admiralty and maritime jurisdiction). *Id.* at **15-16 (citations omitted). The Court in Frontenac was not dealing with a Rule B maritime attachment case, did not have *in personam* or *quasi-in-rem* jurisdiction over the defendants, and the plaintiff had failed to plead an alternative basis for subject matter jurisdiction to pursue its alter-ego claim. *Id*. at ** 16-19. The holding in *Frontenac* follows *Orion* because its facts were consistent with those in the Second Circuit case. As set forth above, *Orion* is inapplicable to the present action.

*Packers v. Compania Colombiana Del Caribe S.A.*, 339 U.S. 684, 70 S. Ct. 861, 94 L. Ed. 1206 (1950)). Defendants are seeking to dismiss the First Amended Verified Complaint on the allegation that Plaintiff has failed to state a claim upon which relief may be granted and that the corporate veil can be pierced only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil. *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 359 (5th Cir. 2003) ("*Bridas I*"). *See* Doc. 67, pp. 11-12. As this Court has already sustained the Rule B Attachment based under a more exacting burden of proof required pursuant to Supplemental Rule E(4)(f) and must accept all of Plaintiff's factual allegations as true and in the light most favorable to Plaintiff, this Honorable Court should deny Defendants' Rule 12(b)(6) motion to dismiss in its entirety.

1.      **Rule 12(b)(6) Standard of Review**

Rule 12(b)(6) authorizes courts to dismiss claims for failure to state a legally cognizable claim that is plausible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). When considering a Rule 12(b)(6) motion, a court *must* accept the plaintiff's factual allegations as true and view them in the light most favorable to the plaintiff. *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). A court may not look beyond the face of the pleadings to determine whether relief can be granted based on the alleged facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citation omitted); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570,

127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). According to the Supreme Court, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Said another way, Plaintiff's "factual allegations must be enough to raise a right to relief above the ***speculative level*** on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (emphasis added). There can be no dispute that Plaintiff's allegations (which were upheld by the District Court in Oregon and this Court under the more exacting "probable cause" standard) rise well above mere speculation. Accordingly, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) must be dismissed in its entirety.

2.       **Plaintiff Has Easily Cleared the Rule 12(b)(6) Pleading Requirement for Alter-Ego Liability and the Motion to Dismiss Must be Denied in its Entirety.**

Fearless Shipping argues that there is "no allegation" concerning any involvement by Blue Wall or Fearless Shipping in the chartering of the M/V ADAMASTOS, which is the transaction at issue, nor any of the subsequent events in Brazil and therefore Plaintiff's action must be dismissed. Doc. 67, at p. 12 (citing *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347,359 (5th Cir. 2003) ("*Bridas I*").[5] Plaintiff's First Amended Verified Complaint includes specific allegations of Defendants George Gourdomichalis, Stathis Gourdomichalis, and Phoenix Shipping dominating and controlling not only Defendant Adamastos Shipping, but the other named Defendants, including but not limited to Fearless Shipping and Blue Wall. *See* Doc. 54. The argument that the First Amended Verified Complaint does not *allege* Fearless Shipping and Blue Wall were involved in the transaction at issue, is a 'form over substance' argument which

---

[5] In *Bridas I*, the district court's decision was overturned by the Fifth Circuit Court of Appeals and remanded because of a failure by the district court to take into account "**all**" of the aspects of the relationship between the Government and Turkmenneft." *Bridas I*, 345 F.3d. at 359-60 (emphasis added). The Fifth Circuit held that the district court committed an error of law which required the alter-ego issue to be reconsidered on remand. *Id*.

purposefully ignores (in an effort to distract the Court from) the one hundred and fifty (150) plus specific allegations in support of piercing the corporate veil. *See* Doc. 54, ¶¶ 13-47 and 55-201. There is no requirement under Fifth Circuit case law that each and every alleged alter-ego defendant must be included in each and every factual allegation in support of Plaintiff's claims. *See U.S. v. Jon-T Chemicals, Inc.,* 768 F.2d 686, 694 (5th Cir. 1985)(There is no general legal "…litmus test for determining whether a subsidiary is the alter ego of its parent. Instead, we must look to the totality of the circumstances. Resolution of the alter ego issue is heavily fact-specific and, as such, is peculiarly within the province of the trial court.").

In making an alter ego determination, a court is "concerned with reality and not form, [and with] how the corporation[s] operated." *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 447 F.3d 415, 416 (5th Cir. 2006) ("*Bridas II*") (quoting *Jon-T Chemicals, Inc*., 768 F.2d at 693)). Plaintiff's First Amended Verified Complaint has set forth sufficient factual allegations of domination and control by the Defendants which raise the right to relief above a "speculative level" and the motion to dismiss must be denied. *Hiller Cranberry Prods. v. Koplovsky*, 165 F.3d 1, 10 (1st Cir. 1999) (holding that alter-ego liability may be found "when there is evidence of a confused intermingling between corporate entities or where one corporation actively and directly participates in the activities of the second corporation, apparently exercising pervasive control."); *see also*, *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 530-31 (S.D.N.Y. Aug. 1, 2006) ("Taken together, the Complaint and Plaintiff's extrinsic allegations describe an international web of suspect corporations and individual actors who employ tacit alliances and shifting identities as the primary tools of their malfeasance. In a case such as this, the Court will not permit [movant] to employ those same tools to escape the attachment presently in dispute.").

Defendants argue that the fraud allegations in paragraphs 189 through 201 of the First Amended Verified Complaint lack the specificity required to demonstrate that the domination and control of the Defendants was used to commit a fraud or wrong that injured the Plaintiff. Doc. 67, pp. 12-14. The Fifth Circuit Court of Appeals has held that courts will apply the alter ego doctrine and hold a defendant liable for the actions of its instrumentality in the name of equity when the corporate form is used as a "sham to perpetrate a fraud." *Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1132 (5th Cir. 1988). Defendants Phoenix Shipping, George Gourdomichalis, Stathis Gourdomichalis, and Adamastos Shipping **knew** that Adamastos Shipping was not adequately capitalized at the time the company was formed and throughout their operation of the M/V ADAMASTOS. DE 68, ¶ 173-174. The M/V ADAMASTOS was acquired through a dubious, self-serving lending arrangement with the mortgagee bank which recorded a mortgage for four (4) times the value of the Vessel, did not require the Defendants to provide any capital for the ship, did not require proof of an ability to operate and manage the Vessel, and did not require proof of adequate ability to insure the Vessel, and/or make sure that it was fit and seaworthy for its intended service. *Id*. There is no dispute that Defendants Phoenix Shipping, George Gourdomichalis, Stathis Gourdomichalis, and Adamastos Shipping **knew** that Adamastos Shipping had very limited cash on hand and no reserve available to pay for any costs, fees, and/or expenses which might necessarily arise with a vessel. Doc. 54, at ¶189. In addition, Defendants **knew** that Adamastos Shipping was routinely falling behind in its payment obligations and had stopped paying the $18,000 per month management fee and other amounts due and owing pursuant to the Ship Management Agreement. *Id.*, at ¶ 190 – 194. The Defendants knew all of this information (and hid it) because George and Stathis Gourdomichalis were regularly utilizing their

other shell companies Thalassa and Alastor to make bail-out payments on behalf of the M/V ADAMASTOS when there was not contractual obligation to do so. *Id.*

Defendants Phoenix Shipping, George Gourdomichalis, and Stathis Gourdomichalis used their dominion and control over Defendant Adamastos Shipping to enter into a charter party agreement with Plaintiff PACIFIC GULF, despite knowledge that the M/V ADAMASTOS was unseaworthy, not fit for its intended purpose, and not in compliance with all international regulations. *Id.*, at ¶¶ 195-197 and Exhibit 1 thereto. Unsurprisingly, the Vessel was unable to perform the voyage, was uninsured, was unable to make necessary and needed repairs in Brazil, and was ultimately abandoned by the Defendants. *Id.*, at ¶¶ 13-39. Even though Adamastos Shipping was at all times undercapitalized, Phoenix Shipping, negotiated the charter of the M/V ADAMASTOS with Plaintiff Pacific Gulf on April 8, 2014. *Id.* Defendants Phoenix Shipping, George Gourdomichalis, Stathis Gourdomichalis, and Adamastos Shipping used these false, misleading, and inaccurate representations to their own advantage in order obtain Plaintiff's business and to earn over $1.1 million in charter hire. *Id.*, at ¶ 198.

George Gourdomichalis and Stathis Gourdomichalis, directly and indirectly through Alastor, Thalassa, Phoenix Shipping, Blue Wall, and Fearless Shipping now intend to operate the M/V FEARLESS (and other seven (7) Blue Wall vessels), with impunity, without providing Plaintiff with payment for the damages caused by their abandonment of the M/V ADAMASTOS in Brazil. *See* First Amended Verified Complaint, Doc. 54; *see also Asarco LLC v. Americas Mining Corp.,* 396 B.R. 278, 321 (S.D. Tex., Aug. 30, 2008)(wherein the court noted that in a circumstance where the subsidiary who owns the attached asset argued it had not committed any fraud against plaintiff – though other subsidiaries had – could still have its veil pierced. "To hold otherwise, would be stating that a party seeking to recover for the fraud or injustice that resulted

from a sophisticated shell game is unable to pierce the corporate veil. In effect, a contrary conclusion would essentially recognize that a conglomerate can utilize each subsidiary to work one instance of fraud or injustice with impunity."). There is **no** requirement for Plaintiff to plead fraud specifically in maritime attachment cases, as the Fifth Circuit's fraud test is quite broad. *See, e.g.*, *Naftomar Shipping & Trading Co. v. KMA Int'l S.A.*, 2011 U.S. Dist. LEXIS 24723, *18 (S.D. Tex. Mar. 10, 2011) (Rule B attachment case wherein the attachment was upheld based on the following limited fraud allegations in support of plaintiff's theory of alter-ego: defendants fraudulently induced plaintiff to enter into the time charter party agreement; made fraudulent representations as to its financial strength to perform the charter party; and thwarted plaintiff's ability to inquire into the financial strength of the defendants).

The **only** maritime attachment case cited to and relied upon by Defendants for its argument that a fraud must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure is a memorandum and recommendation from Magistrate Judge Brian Owsley, which was overruled by District Judge Gonzalez following objections by the parties. Defendants again failed to cite to the contrary, controlling authority in their motion to dismiss. In *White Rosebay Shipping S.A. v. HNA Group Co.*, 2013 U.S. Dist. LEXIS 15249, at *11-12 (S.D. Tex. Feb. 5, 2013), District Judge Gonzalez denied the defendants' motion to dismiss and upheld the plaintiff's maritime attachment, (overruled Magistrate Judge Owsley's December 5, 2012 recommendation) and rejected the exact argument advanced by the Defendants in the present motion. District Judge Gonzalez outlined the pleading requirements for fraud to support a theory of alter-ego in a maritime attachment action as follows:

> Furthermore, the Court concludes that one can reasonably infer from the allegations of the complaint that these corporate abuses resulted in a fraud or injustice to Plaintiff. While the mere prospect of an unfulfilled judgment is not sufficient to pierce the corporate veil, ***neither is it necessary that Plaintiff plead actual fraud***

*with particularity, especially at this early stage of the proceedings*. Defendants argue that to support its alter ego claim, Plaintiff was required to meet the pleading requirements of FED. R. CIV. P. 9(b). (D.E. 31 at 10.) *In maritime cases, however, federal common law does not require a showing of actual fraud to pierce the corporate veil. See, e.g., Cunningham*, 699 F.2d at 680 ("must present an element of injustice or fundamental unfairness"); *Talen's Landing, Inc. v. M/V Venture II*, 656 F.2d 1157, (5th Cir. 1981) (concluding that veil may be pierced to prevent "manifest injustice to third parties").

In sum, the Court concludes that the complaint provides reasonable grounds for piercing the corporate veil of HNA and its subsidiaries OHT and OHT Osprey. Rule E(4)(f) requires the Court to make a preliminary determination as to whether there are reasonable grounds to proceed with the attachment, but this procedure is not intended to definitively resolve the dispute between the parties. *N. of England Protecting and Indemnity Assoc.* v. M/V NARA, Civ. No. 99-0464, 1999 U.S. Dist. LEXIS 22375, 1999 WL 33116416, at *2 (E.D. La. Feb. 26, 1999). Defendants do not rely on any controverting evidence in this case, but simply argue that Plaintiff's complaint failed to set forth a *prima facie* case of alter ego liability. *The Court concludes that, at this stage of the proceedings, Plaintiff has pled sufficient facts to maintain the maritime attachment.*

*White Rosebay Shipping S.A*., 2013 U.S. Dist. LEXIS 15249, *11-12 (emphasis added); *see also*

*Bd. Of Trustees of Mill Cabinet Pension Trust Fund for N. Cal. v. Valley Cabinet and Mfg. Co*.,

877 F.2d 769, 774 (9th Cir. 1989); *Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC*,

2009 U.S. Dist. LEXIS 54670, at *62 (S.D.N.Y. June 23, 2009)(The "injury caused by [George

Gourdomichalis and Stathis Gourdomichalis'] domination-and the one that warrants exercise of

this Court's equitable powers to pierce [Defendants'] corporate veil-is that the diverted funds are

unavailable to satisfy [Defendants'] liability to [Pacific Gulf] unless and until the veil is pierced.").

Defendants ran a sham, shell company in Adamastos Shipping into the ground,

abandoned an unseaworthy Vessel in Brazil, and left Plaintiff to deal with the damages, costs,

and expenses caused by the Defendants' breach of the charter party.  Now, like the name

suggests, Defendants' operations have risen like a phoenix from the ashes to run a new group of

vessels through Phoenix Shipping, Blue Wall, Fearless Shipping, and the other vessel owning

subsidiaries.  Under the circumstances, the Court is not limited to the self-servingly pleading

arguments advanced by Defendants, but must review the totality of the circumstances and examine how Defendants George Gourdomichalis and Stathis Gourdomichalis, directly and indirectly have dominated and controlled this elaborate network of sham, shell companies, including Fearless Shipping and Vigorous Shipping, through companies such as Phoenix Shipping and Blue Wall Shipping, in order to abuse, dominate and control the corporate form for their benefit and to the detriment of creditors such as Plaintiff Pacific Gulf. Plaintiff has more than satisfied the pleading requirements to survive a Rule 12(b)(6) motion to dismiss and the Defendants' motion should be denied in its entirety.

3. **Plaintiff has Adequately Alleged Successor Liability and the Motion to Dismiss Must be Denied in its Entirety.**

Plaintiff has also pled in its First Amended Verified Complaint that the named Defendants, including Blue Wall and Fearless Shipping (among the other SPVs in the Blue Wall fleet) are merely successor corporations of Defendants George Gourdomichalis and Stathis Gourdomichalis' other shell companies, including Adamastos Shipping. *See* First Amended Verified Complaint at ¶¶ 203-211. Specifically, the Defendants:

a) occupy and carry on business from the same business premises as Adamastos Shipping, *i.e.* the offices of George Gourdomichalis and Stathis Gourdomichalis at Phoenix Shipping;

b) they transact their business by and through substantially identical personnel;

c) share common officers and directors, *i.e.* George Gourdomichalis and Stathis Gourdomichalis;

d) have the same financing banks financing their business and bank accounts;

e) have a continuity of the same principal, controlling shareholders who make decisions for the companies, *i.e.* George Gourdomichalis and Stathis Gourdomichalis;

f) there is a continuity of general business operations through Phoenix Shipping including the same insurers The American Club and same accountants Moore Stephens; and

g) there is continuity of assets to the new single purpose entities by and through Phoenix Shipping.

*Id.*, at ¶ 204.  Notwithstanding the purported difference in the shell company name, all commercial operations, management, crewing, accounting, and insurance handling of Fearless Shipping, and the other single vessel owning companies are performed by the same employees working out of the same Phoenix Shipping office which controlled and ran Adamastos Shipping, all at the direction, domination, and control of George Gourdomichalis and Stathis Gourdomichalis. Accordingly, Defendants Blue Wall, Fearless Shipping, and the remaining shell company Defendants are a mere continuation of the same business of Adamastos Shipping,  by and through George Gourdomichalis, Stathis Gourdomichalis, and PHOENIX SHIPPING, as evidenced by the common identity of assets, location, management, personnel, control, and stockholders, such that those corporations are responsible and legally liable for the obligations of  Adamastos.  *See e.g.*, *Atchison, T. & S.F. Ry. V. Brown &  Bryant*, 159 F.3d 358 (9th Cir. 1997).  Federal Courts sitting in admiralty adopt and apply the successor corporation doctrine.  *See  In re Louisiana Crawfish Producers*, 772 F.3d 1026, 1030 (5th Cir. 2014) (citing *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182 n. 5, 94 S. Ct. 414, 38 L. Ed. 2d 388 (1973). The general rule of corporate-successor liability is that a corporation that purchases another corporation "is not responsible for the seller's debts or liabilities, except where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a continuation of the selling corporation; or (3) the transaction is entered into to escape liability." *Id.*

Plaintiff has alleged that there is a continuity of assets and business operations of the Defendant Adamastos Shipping by and through Defendants' George Gourdomichalis, Stathis

Gourdomichalis, and Phoenix Shipping creating, dominating, and controlling Defendants Blue Wall, Fearless Shipping, and the other Blue Wall single purpose entities. Plaintiff's allegations support the successor-in-interest theory of liability because there are specific factual allegations that the new alter-ego defendants are mere continuations of the prior shipowning and management business conducted through Adamastos Shipping. The assets, including but not limited to all bank accounts, employees, management agreements, operations, business contacts, and third-party vendors were merely passed through from one shell company to another. Doc. 54, ¶¶ 203 – 211. Accordingly, Plaintiff has satisfied the pleading requirements to survive Defendants' Rule 12(b)(6) motion to dismiss, which should be denied in its entirety.

### D. DEFENDANTS' 12(B)(1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION HAS ALREADY BEEN REVIEWED BY THIS COURT

Finally, Defendants seek to re-argue and relitigate their allegation that the case must be dismissed for a lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. Rule 12(b)(1). *See* Doc. 67, at p. 17. As this argument has been the subject of extensive briefing and three (3) prior hearings it is respectfully submitted that the motion to should be denied in its entirety. For the sake of good order, Plaintiff reincorporates by reference its arguments and legal authorities in opposition to Defendants' subject matter jurisdiction arguments as previously set forth in Plaintiff's Response in Opposition to Motion to Vacate (Doc. 22), Emergency motion for Reconsideration (Doc. 36), Notice of Authority (Doc. 37), Second Declaration of Edward Mills-Webb (Doc. 40), Post-Hearing March 18, 2019 Notice (Doc. 46), and Response in Opposition to Defendant Fearless Shipping's Motion for Reconsideration (Doc. 53). Plaintiff's First Amended Verified Complaint satisfies the pleading requirements to establish subject matter jurisdiction and defeat the motion to dismiss pursuant to Rule 12(b)(1). Doc. 54.

Plaintiff's underlying cause of action is for breach of a charter party agreement. Doc. 54, ¶¶ 12-39. "It has long been decided that this grant includes jurisdiction over all contracts . . . which relate to the navigation, business, or commerce of the sea." *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 199 (2d Cir. 1992) (quotation marks and citations omitted). There is no serious dispute that the Charter Party is a maritime contract. *See Fednav, Ltd. v. Isoramar, S.A.*, 925 F.2d 599, 601 (2d Cir. 1991). Accordingly, Plaintiff has properly invoked the subject matter jurisdiction of this Court through its Verified Complaint which seeks the attachment of property belonging to the Defendants pursuant to Supplemental Rule B as security for its underlying breach of the charter party claim and has properly alleged its claims against Defendants for alter-ego liability and successor liability. *See e.g.*, Doc. 50, March 19, 2019 Order upholding attachment and finding the requirements of Fed. R. Civ. P. Rule 12(b)(1) and Supplemental Rule B satisfied by Plaintiff.

## CONCLUSION

WHEREFORE, for the reasons more fully stated above, the factual allegations contained in Plaintiff's First Amended Complaint, and what may be added at oral argument, Plaintiff, respectfully requests that this Court deny Defendant Fearless Shipping & Trading S.A.'s Motion to Dismiss and Defendant Blue Wall Shipping Ltd.'s Motion to Dismiss in their entirety, and grant such other and further relief as justice may require.

Respectfully submitted,

Dated:    May 28, 2019          CHALOS & CO, P.C.
          Houston, Texas

By:   /s/ Briton P. Sparkman
      George M. Chalos
      SDTX Federal Id No. 623727
      Briton P. Sparkman
      SDTX Federal Id No. 1148116
      Margaret L. Manns

SDTX Federal Id No. 24091010
7210 Tickner Street
Houston, TX 77055
PH:  (713) 574-9582
FX:  (866) 702-4577

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2019, I arranged for a copy of the foregoing Response in Opposition to Motion to Dismiss to be filed via cm/ECF and served upon all counsel of record which has appealed in this case:

BLANK ROME LLP

Keith B. Letourneau, kletourneau@blankrome.com
Jeremy A. Herschaft, jherschaft@blankrome.com
David G. Meyer, dmeyer@blankrome.com

*Attorneys for Fearless Shipping & Trading, S.A.*


LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD

Todd G. Crawford, tcrawford@lawla.com;
David B. Sharpe, dsharpe@lawlaw.com;

SEWARD & KISSEL, LLP

Bruce G. Paulsen, paulsen@sewkis.com;
Brian P. Maloney, maloney@sewkis.com;
Shrey Sharma, sharma@sewkis.com;

*Attorneys for Blue Wall Shipping Ltd.*

/s/ Briton P. Sparkman
Briton P. Sparkman
CHALOS & CO, P.C.