**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

```
--------------------------------------------------------x
PACIFIC GULF SHIPPING CO. AND           :
MICHAEL ELSE & COMPANY LTD.             :        CIVIL ACTION NO. H-19-CV-727
IN ITS OWN RIGHT AND AS                 :
SUBROGEE OF PACIFIC GULF                :
SHIPPING CO.,                           :
                        Plaintiff,      :
                                        :
        v.                              :        IN ADMIRALTY
                                        :
ADAMASTOS SHIPPING & TRADING            :
S.A., VIGOROUS SHIPPING & TRADING       :
S.A., FEARLESS SHIPPING & TRADING       :
S.A.,  BLUE WALL SHIPPING LTD.,         :
PHOENIX SHIPPING & TRADING S.A.,        :
THALASSA HOLDINGS S.A.,                 :
ALASTOR MARINE S.A., GEORGE             :
GOURDOMICHALIS, and EFSTATHIOS          :
GOURDOMICHALIS,                         :
                                        :
                        Defendants.     :
--------------------------------------------------------x
```

## SECOND AMENDED VERIFIED COMPLAINT

**COME NOW**, Plaintiff PACIFIC GULF SHIPPING CO. (hereinafter "PACIFIC GULF")

and MICHAEL ELSE & COMPANY LTD. in its own right and as subrogee of PACIFIC GULF

(hereinafter "MECO") (collectively "Plaintiffs"), by undersigned counsel, and pursuant to Fed. R.

Civ. P. Rule 15 hereby file this Second Amended Verified Complaint against Defendants

ADAMASTOS   SHIPPING & TRADING S.A. ("ADAMASTOS SHIPPING"), VIGOROUS

SHIPPING & TRADING S.A. ("VIGOROUS SHIPPING"), FEARLESS SHIPPING &

TRADING S.A. ("FEARLESS SHIPPING"), BLUE WALL   SHIPPING   LTD. ("BLUE

WALL"), PHOENIX SHIPPING & TRADING  S.A. ("PHOENIX  SHIPPING"), THALASSA

HOLDINGS S.A. ("THALASSA"), ALASTOR   MARINE   S.A. ("ALASTOR"), GEORGE

GOURDOMICHALIS ("George Gourdomichalis"), and EFSTATHIOS GOURDOMICHALIS ("Stathis Gourdomichalis") (collectively the "Defendants"), and aver and pleads as follows:

## JURISDICTION, VENUE AND PARTIES

1.      Subject matter jurisdiction of this Honorable Court is based upon admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and is brought under the provision of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. This case is also an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure for claim of breach of a maritime contract. The Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 204.

2.      Jurisdiction and venue are proper in this matter, as an asset of the Defendants that may be attached by process of maritime attachment and garnishment under the provisions of Rule B, *i.e.* USD 5,060,000 which was deposited with the Clerk of the Court as substitute res for the M/V FEARLESS. DE 73.

## THE PARTIES

3.      At all times material hereto, Plaintiff PACIFIC GULF, was and still is a foreign company organized under the laws of The Marshall Islands.

4.      At all times material hereto, Plaintiff MECO, was and still is a foreign company organized under the laws of England and Wales.  MECO owns and manages the insurance brand, The Charterers P&I Club ("Charterers Club").  MECO is the subrogee of PACIFIC GULF and at all material times was acting as the underwriting agents for a specialized marine insurance policy on behalf of the Munich Re Group's wholly owned subsidiary, Great Lakes Insurance SE.

5.      At all times material hereto, Defendant ADAMASTOS SHIPPING was and still

2

is  a foreign company incorporated under the laws of Liberia and an address of "Care of PHOENIX  SHIPPING" located on the Akti Miaouli, in Piraeus, Athens, Greece.

6.     At all times material hereto, Defendant VIGOROUS SHIPPING was and still is a  foreign company incorporated under the laws of Liberia and an address of "Care of PHOENIX  SHIPPING" located on the Akti Miaouli, in Piraeus, Athens, Greece.

7.     At all times material hereto, Defendant FEARLESS SHIPPING was and still is a  foreign company incorporated under the laws of Liberia and an address of "Care of PHOENIX  SHIPPING" located on the Akti Miaouli, in Piraeus, Athens, Greece.

8.     At all times material hereto, Defendant BLUE WALL, was and still is a foreign  company registered to do business in The Marshall Islands and maintains an address of "Care of  PHOENIX SHIPPING" located on the Akti Miaouli, in Piraeus, Athens, Greece.

9.     At all times material hereto, Defendant PHOENIX SHIPPING was and still is a  foreign company registered to do business in The Marshall Islands which has maintained an office   located on the Akti Miaouli, in Piraeus, Athens, Greece since 2013. The current address is at 47-49 Akti Miaouli, 5th Floor, Piraeus 185 36, Greece.

10.     At all times material hereto, Defendant THALASSA was and still is a foreign  company organized under the laws of The Marshall Islands and run from the same address as  PHOENIX SHIPPING.

11.     At all times material hereto, Defendant ALASTOR was and still is a foreign  company organized under the laws of The Marshall Islands and run from the same address as  PHOENIX SHIPPING.

12.     At all times material hereto, Defendant George Gourdomichalis was and is an  individual who is a foreign citizen residing in Greece and working  from an office within

3

PHOENIX SHIPPING located on the Akti Miaouli, in Piraeus, Athens, Greece.

13.     At all times material hereto, Defendant Stathis Gourdomichalis was and is an  individual who is a foreign citizen residing in Greece and working from an office within PHOENIX SHIPPING located on the Akti Miaouli, in Piraeus, Athens, Greece.

## THE SUBSTANTIVE CLAIMS

14.     On or about April 8, 2014, Plaintiff PACIFIC GULF entered into a charter party  agreement  with  Defendant ADAMASTOS SHIPPING for use of the M/V ADAMASTOS (hereinafter "the  Vessel") for a period between ninety (90) days and one hundred and eighty (180) days. The charter   agreement  between  PACIFIC GULF and Defendant ADAMASTOS set forth specific terms, rights, and  obligations between the parties. *See* Charter Party, Exhibit 1.

15.     The April 8, 2014 charter party agreement is a maritime contract.

16.     At all relevant times notices and contact details for the Owners of the Vessel,  Defendant ADAMASTOS SHIPPING was listed as "PHOENIX SHIPPING." *See* Exhibit 1.

17.     Pursuant to the terms of the charter party, PACIFIC GULF was to pay USD 9,000 per day including overtime payable ten (10) days in advance plus USD 130,000 gross ballast bonus to  Defendant ADAMASTOS SHIPPING, payable every fifteen (15) days in advance in exchange for  the use of a seaworthy vessel. *Id.*

18.     The parties further agreed to the arbitration of disputes arising out of the maritime  contract in London with English law to apply. *Id.*

19.     Plaintiff PACIFIC GULF duly complied with all obligations under the terms of the charter party  agreement.

20.     On or about July 14, 2014, PACIFIC GULF, as disponent owners of the Vessel, entered into a sub-charter party agreement with Integris Co Ltd. for a one (1) time charter trip of one (1) laden leg *via* Brazil to Singapore-Japan range carrying lawful/harmless grain products in bulk.

21.     Integris Co Ltd. sub-chartered the Vessel to Marubeni Corporation who was the owner of the soyabean cargo to be carried by the Vessel.

22.     The Vessel arrived at Sao Francisco Do Sul, Rio Grande on or about July 31, 2014 and commenced loading of a cargo of soyabeans starting at 0120 hours LT on August 1, 2014.

23.     On or about August 5, 2014, the Vessel was inspected by local Port State Control authorities in Brazil. The Brazilian authorities discovered no fewer than forty-two (42) deficiencies with the Vessel. The Port State Control authorities detained the Vessel pending further investigation and rectification of the deficiencies.

24.     At or about 1855 hours LT on August 6, 2014, and while still loading cargo, the Vessel broke free of her moorings, drifted to the middle of the channel, and grounded.

25.     The Vessel had loaded approximately 59,674.680 metric tons of soyabeans as of August 6, 2014, at or about the time that she broke free of her moorings and grounded.

26.     The Vessel commenced refloating operations with her own engines and thereafter with the assistance of tugs and pilots, as well as by Salvors, Rebocadores do Brasil SA, and was refloated on August 7, 2014. Subsequently, the Vessel was shifted to the inner anchorage north of the terminal berth.

27.     After the grounding, the terminal would not permit the Vessel to re-berth alongside to load the remaining cargo without meeting various conditions, including the

posting of security. ADAMASTOS SHIPPING, PHOENIX SHIPPING, George Gourdomichalis, and/or Stathis Gourdomichalis (and/or others acting at their instruction and control) failed, neglected, and otherwise refused to comply with the terminal requirements and the Port Captain ordered the Vessel to shift to the outer anchorage, given the Vessel's draft and the Port State Control deficiencies and detention imposed on the Vessel.

28.     Over the course of the next six (6) months, the Vessel remained under detention, failed to load the remainder of the cargo, and failed to complete the voyage as required under the various charter party obligations.

29.     Defendants abandoned not only the Vessel, their contractual partners, and the cargo, but also the crewmembers they had hired to live and work onboard the Vessel.

30.     During this period, numerous claims and causes of actions were commenced against the Vessel by various third parties in Brazil, including (but not limited to) the following:

      a.  $1,078,512 action by the Salvors for unpaid fees and costs;

      b.  $160,000 action by Sagres Agenciamentos Maritimos Ltda. for unpaid agency fees;

      c.  $8,250 action by Kronos Maritime Agent Limited for unpaid agency fees;

      d.  An action by the Labour Prosecutor's Office which fined the Vessel $19,000 per day from the period of November 26, 2014 – December 30, 2014. As of December 31, 2014, the LPO action fine was increased to $150,000 per day for non- compliance through January 18, 2015, which was subsequently increased to $187,000 per day.

      e.  On or about December 14, 2014, the Federal Government of Brazil commenced an action directing the Vessel and her owners to make the necessary repairs to the Vessel and deliver the cargo to its final destination.

f.  On or about January 3, 2015 the Master and crew of the Vessel commenced an action to recover their wages which had not been paid while working on the Vessel.

31.     On January 7, 2015, PHOENIX SHIPPING purportedly submitted a letter to the Greek government, asserting PHOENIX SHIPPING ceased operation of the M/V ADAMASTOS.

32.     No contemporaneous written notice of the termination of management services was ever provided by PHOENIX SHIPPING to ADAMASTOS SHIPPING.

33.     No written notice of the termination of management services was ever provided by PHOENIX SHIPPING to PACIFIC GULF as was required pursuant to clause 18.1 of the ship management agreement. *See* George Gourdomichalis Transcript, Exhibit 3, at p. 157:1-8; *see also* Ship Management Agreement dated December 7, 2012 at Exhibit 11.

34.     Despite being the operator[1] and manager for the Vessel, PHOENIX SHIPPING did not seek repair estimates for the ADAMASTOS, did not provide budget proposals for repair work, and did not send any written demands for payment to ADAMASTOS SHIPPING for any of the items which needed to be rectified and the claims which needed to be settled in Brazil. *See* George Gourdomichalis Transcript, Exhibit 3, at p. 153:7-11.

35.     On February 12, 2015, the ADAMASTOS was formally found and/or declared by Brazilian authorities to have been abandoned by both her owners and managers.

36.     Marubeni Corporation sought to recover its loss of value of its soyabean cargo, estimated to be $32,650,000 against Integris Co Ltd. in London arbitration proceedings.

---

[1] Operator is an entity "who is responsible for the operation, manning, victualing, and supplying of the vessel." 33 U.S.C. 1901(9).

37. In turn, Integris Co Ltd. filed claims against PACIFIC GULF in London arbitration proceedings and sought no less than $18,000,000 plus $559,219.68 for the damages and losses caused by the Vessel's failure to complete the voyage to Marubeni Corporation.

38. Integris Co Ltd. has sought an additional $737,451.82 in damages for overpaid hire, communication/entertainment/victualling fees, and fuel oil purchased.

39. On or about June 6, 2016, Plaintiff PACIFIC GULF pursued its contract claims in London arbitration against ADAMASTOS SHIPPING for breach of the charter party agreement on the grounds that, *inter alia*:

    a. The Vessel was not suitable for loading, carriage, and discharge.

    b. The Vessel was not fit for service under the charter party agreement or for any voyage and the Vessel was not seaworthy and/or properly manned, equipped, and supplied.

    c. The Vessel did not comport with the regulations and/or requirement for any port, port of call, or country.

    d. The Vessel did not have up-to-date certificates on board.

    e. ADAMASTOS SHIPPING breached their obligation under the charter party agreement "to make the ship seaworthy, properly manned, equipped, and supplied, and make the holds fit and safe for the reception, carriage and preservation of the cargo."

    f. ADAMASTOS SHIPPING breached the charter party agreement when ADAMASTOS SHIPPING: (1) failed to take steps to remedy the deficiencies; (2) failed to complete loading onboard the Vessel; (3) failed to commence its voyage to China; (4) failed to deliver the cargo to China; (5) abandoned the Vessel, the contracted voyage, the cargo, and carriage of cargo; and (6) failed to deliver the cargo to the discharge port.

40. On April 19, 2017, the Sole Arbitrator issued a final award against ADAMASTOS SHIPPING and declared that PACIFIC GULF was entitled to be indemnified by ADAMASTOS

SHIPPING for *any and all* liabilities that PACIFIC GULF "have or might be found to have in the near future" related to the claims up the charter chain by Marubeni Corporation and Integris Co Ltd., plus applicable costs, fees, and interest. *See* First Final Award, Exhibit 2.

41. Plaintiff PACIFIC GULF had a valid and ripe claim against ADAMASTOS SHIPPING under English law as soon as the Cargo Claim was pursued by Integris Co. Ltd. against PACIFIC GULF in arbitration in May 2015 consistent with the parties' charter party agreements.

42. On May 23, 2018, Marubeni's Cargo Claim was settled by Intergis Co Ltd. in exchange for payment of $18,000,000. *See* Exhibit 27.

43. The settlement amount for Marubeni's Cargo Claim was paid on May 25, 2018 from Plaintiff MECO on behalf of Intergis Co Ltd. to Marubeni's London Solicitors, Messrs. Roose & Partners. A copy of the Bank Swift is attached hereto as Exhibit 28.

44. Once the Cargo Claim was settled, there was absolutely no dispute that the actual liability against Plaintiff PACIFIC GULF in the underlying arbitration proceedings had been reduced to quantifiable damages. PACIFIC GULF's claim up the charter party agreement chain against ADAMASTOS SHIPPING is (and was) ripe as a matter of applicable English Law.

45. The Cargo Claim was subsequently reduced to writing and settled by and between Intergis Co Ltd. and Plaintiff PACIFIC GULF by way of a settlement agreement dated March 13, 2019. A copy of the settlement agreement is attached hereto as Exhibit 29.

46. The Settlement Sum was $18,000,000 for the Cargo Claim and $500,000 for costs asserted by Intergis against Plaintiff PACIFIC GULF.

47. MECO, through its wholly owned brand the Charterers Club, held the applicable Charterers Liability Insurance for both Intergis Co Ltd. and PACIFIC GULF for this particular voyage and has adjusted each party's respective claim files to reflect the fact that Intergis has been

fully reimbursed for the Settlement Sum and that Plaintiff PACIFIC GULF holds the Settlement Sum as a loss on its own Liability File with the Club. A copy of the applicable debits and credits reflecting this accounting arrangement are attached hereto as Exhibit 30.

48.     On March 14, 2019, Intergis Co. Ltd. issued a Receipt and Release letter, confirming that the claim was fully settled and funded in accordance with the parties' March 13, 2019 Settlement Agreement. A copy of the Receipt and Release is attached hereto as Exhibit 31.

49.     PACIFIC GULF has a valid and ripe claim against ADAMASTOS SHIPPING under English Law from the date the claim was first noticed and pursued by Intergis in May 2015. MECO as the subrogated insurer has the right to pursue recovery of this claim up to the amount of the Settlement Sum, together with the other losses, damages, costs, and interest which are claimed in these proceedings.

50.     The Marubeni/Intergis settlement of the Cargo Claim and subsequent Settlement Agreement between Intergis Co Ltd. and Plaintiff PACIFIC GULF quantify the damages suffered by PACIFIC GULF and MECO from the claim in an amount of no less than $18,500,000.

51.     The loss arising from the Cargo Claim as a result of Defendants' actions belongs in the first instance to PACIFIC GULF, however as there is full liability coverage for the claim, MECO, through the Charterers Club, directed the conclusion of the Cargo Claim with Marubeni, paid the full Settlement Sum pursuant to Intergis' cover with the Charterers Club, and is now entitled to recover the Settlement Sum, together with the other losses, damages, costs, and interest which are claimed in these proceedings, as subrogee.

## COUNT I – RECOGNITION AND ENFORCEMENT OF THE ARBITRATION AWARDUNDER THE NEW YORK CONVENTION

52.     Plaintiffs restate and re-alleges paragraphs 1 – 51 in the above foregoing Second Amended  Verified Complaint as if set forth herein.

53.     Plaintiffs hereby petition this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et. seq*. (the "New York Convention"), for an order confirming the Award in favor of Plaintiffs and against Defendants, joint and severally.

54.     The United States, Liberia, The Marshall Islands, and the United Kingdom (*i.e.* the country in which the Award was rendered), are signatories of the New York Convention.

55.     Jurisdiction is proper in this Court pursuant to 9 U.S.C. § 203.

56.     Venue is proper in this Court pursuant to 9 U.S.C. § 204.

57.     The April 19, 2017 arbitration award is final and no appeal has been (or can be) taken by ADAMASTOS SHIPPING.  Plaintiffs respectfully submit that no grounds exist for refusal or deferral of recognition or enforcement of the Award against the Defendants under the New York Convention.

58.     For the foregoing reasons, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and against Defendants recognizing and enforcing the Award in the amount of at least $18,500,000, plus applicable interest, costs, and fees as per the Award.

59.     Plaintiffs hereby reserve the right to further petition this Court to confirm any further award of interest or costs which may be rendered in respect of this matter.

## COUNT II – BREACH OF A MARITIME CONTRACT

60.      Plaintiffs restate and re-allege paragraphs 1 – 59 in the above foregoing Second Amended Verified Complaint as if set forth herein.

61.     PACIFIC GULF has alleged a valid prima facie maritime claim for breach of a maritime contract, i.e. the breach of the charter party agreement.  See Exhibit 1.  MECO as subrogee of PACIFIC GULF has the right to bring this claim for breach of contract.  Plaintiffs have suffered

damages as a result of the Defendants' breach.

62.     Accordingly, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and against Defendants, jointly and severally, in the amount of no less than $18,500,000, plus applicable interest, costs, and fees.

## COUNT III - ALTER-EGO LIABILITY

63.     Plaintiffs restate and re-allege paragraphs 1 – 62 in the above foregoing Second Amended Verified Complaint as if set forth herein.

64.     The alter ego doctrine applies when (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil.[2]

### a.     **Domination and Control**

65.     Defendants George Gourdomicahlis and Stathis Gourdomichalis, by and through PHOENIX SHIPPING, THALASSA, and ALASTOR, dominate and control Defendants ADAMASTOS SHIPPING, BLUE WALL, VIGOROUS SHIPPING, FEARLESS SHIPPPING and at least six (6) other  single purpose shell companies which nominally own the vessels in the BLUE WALL fleet.

### i.     ***Phoenix Shipping & Trading S.A.***

66.     On October 26, 2011, PHOENIX SHIPPING was incorporated under the laws of the Marshall Islands.  *See* Phoenix Shipping's Articles of Incorporation, Exhibit 5.

67.     PHOENIX SHIPPING's principle place of business has always been on a street named "Akti Miaoli" in Piraeus Greece.  The office was originally located at 25 Akti Miaouli Street, Piraeus Greece.  In 2014, PHOENIX SHIPPING moved to 47-49 Akti

---

[2] *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003).

Miaouli Street, Piraeus Greece. *See* George Gourdomichalis Transcript, Exhibit 3, at pp. 66:19 – 67:5.

68. Like a phoenix rising from the ashes, PHOENIX SHIPPING was founded in order to create a new business for George Gourdomichalis and Stathis Gourdomichalis following the failure of their previous shipping companies, including but not limited to Gourdomichalis Naftiki Eteria, Free Bulkers, and G. Bros Maritime S.A. *See* George Gourdocumichalis Transcript, Exhibit 3, pp. 14:16-19:19; 46:10-12; 63:15-17.

69. As PHOENIX SHIPPING was described by George Gourdomichalis, "[T]here was no real business plan. It was more our father's, if you will, last business venture in trying to help us establish the business." *Id*.

70. Since PHOENIX SHIPPING's founding in 2011, George Gourdomichalis has made all decisions concerning commercial operations, chartering, and insurance. *See* George Gourdomichalis Transcript, Exhibit 3, pp. 29:21 – 30:9 (describing his responsibilities as "general management of operations, chartering, insurances, if you will. All the commercial side.").

71. Since PHOENIX SHIPPING's founding in 2011, Stathis Gourdomichalis has made all decisions in the company on for the financial, budgeting, purchasing, and administration side of the business. *See* George Gourdomichalis Transcript, Exhibit 3, p. 30:16-18; Stathis Gourdomichalis Transcript, Exhibit 4, p. 13:12-22.

72. For each and every vessel operated by PHOENIX SHIPPING, including the M/V ADAMASTOS, M/V VIGOROUS (and the other SPVs held by BLUE WALL), all communications and exchanges with the Vessel's Classification Society, Flag Administration, and Insurers were performed by PHOENIX SHIPPING, by and through George

Gourdomichalis and  Stathis Gourdomichalis or others acting at their instruction. *See* George Gourdomichalis  Transcript, Exhibit 3, pp. 148:4-13.

73.     Notwithstanding the positions which George Gourdomichalis and Stathis Gourdomichalis held at PHOENIX SHIPPING, there are no records on file with the Greek authorities which list George Gourdomichalis or Stathis Gourdomichalis as employees of  PHOENIX SHIPPING as required under Greek Law. *See* Stathis Gourdomichalis Transcript,  Exhibit 4, at p. 13:3-15.

74.     Pursuant to PHOENIX SHIPPING's Meeting Minutes of October 27, 2011, Drakoulis  Gourdomichalis,  the  father  of  George  Gourdomichalis  and  Stathis Gourdomichalis,  assumed  the roles of President, Secretary, and Treasurer of PHOENIX SHIPPING as well as the  Sole Director of PHOENIX SHIPPING. *See* Phoenix Shipping's Board of Director Minutes of  Meeting dated October 27, 2011, Exhibit 6.

75.     As   Sole   Director,   Drakoulis   Gourdomichalis   accepted   Defendant ALASTOR's   offer to purchase two hundred and fifty shares without par value of PHOENIX SHIPPING at $1.00  per share and THALASSA's offer to purchase two hundred and fifty shares without par value of  PHOENIX SHIPPING at $1.00 per share. *See* Phoenix Shipping's Board of Director Minutes of  Special Meeting dated October 27, 2011, Exhibit 7.

76.     Eight (8) share certificates were issued for sixty two point five (62.5) bearer shares  each. Four certificates were issued to ALASTOR and THALASSA, respectively.  *Id.*

77.     George  Gourdomichalis  is  the  sole  owner  of  ALASTOR,  a  company organized  under the laws of the Marshall Islands which is a "Marshall Islands vessel company" that "does  various investments or other activities in the maritime industry." *See* George Gourdomichalis  Transcript, Exhibit 3, p. 37:9-25.

14

78.     ALASTOR has no office, no phone number, no employees, no staff, and no identifiable presence. It is a shell company which George Gourdomichalis operates from Akti Miaouli.

79.     Stathis Gourdomichalis is the owner of THALASSA, a company organized under the laws of the Marshall Islands which conducts the same type of maritime investment business as ALASTOR. *Id*., Exhibit 3, p. 38:20 – 39:13; Stathis Gourdomichalis Transcript, Exhibit 4, p. 14:15-22.

80.     THALASSA has no office, no phone number, no employees, no staff, and no identifiable presence. It is a shell company which Stathis Gourdomichalis operates from Akti Miaouli.

81.     THALASSA and ALASTOR have no business other than to serve as the conduit through which George Gourdomichalis and Stathis Gourdomichalis own and dominate other businesses including PHOENIX SHIPPING and BLUE WALL SHIPPING. *See* Stathis Gourdomichalis Transcript, Exhibit 4, p. 14:17-18.

82.     From 2012 until the resignation of Drakoulis Gourdomichalis from PHOENIX SHIPPING in 2017, **no** shareholder meetings for PHOENIX SHIPPING were held by the only two (2) shareholders, George Gourdomichalis and Stathis Gourdomichalis. *See* George Gourdomichalis Transcript, Exhibit 3, pp. 62:11 – 63:13.

83.     On or about December 4, 2017, Drakoulis Gourdomichalis resigned as the sole director of PHOENIX SHIPPING. *See* Resignation Letter, Exhibit 8.

84.     On or about December 5, 2017, George Gourdomichalis and Stathis Gourdomichalis held a meeting to accept the resignation of their father as the sole director of PHOENIX SHIPPING and elected themselves as the directors of PHOENIX SHIPPING.

15

*See* Phoenix Shipping's Shareholder Minutes of Meeting dated December 5, 2017, Exhibit 9.

85.     There are no other directors at PHOENIX SHIPPING.

86.     In addition to dominating and controlling all business of PHOENIX SHIPPING, serving as the sole shareholders through nominal offshore shell companies, and electing themselves as the sole directors of the company, they also elected themselves as the only officers of PHOENIX SHIPPING.

87.     Specifically, George Gourdomichalis was elected as the President and Stathis Gourdomichalis as the Secretary and Treasurer of PHOENIX SHIPPING. *See* Phoenix Shipping's Board of Director Minutes of Meeting dated December 5, 2017, Exhibit 9.

88.     There are no other officers of PHOENIX SHIPPING.

89.     On or about March 22, 2018, the board of directors of PHOENIX SHIPPING held a meeting to amend the Articles of Incorporation and issuance of shares. George Gourdomichalis and Stathis Gourdomichalis agreed to accept THALASSA's offer to purchase two hundred and fifty (250) registered shares without par value for $1.00 USD; accept ALASTOR's offer to purchase one hundred and eight five point five (185.5) registered shares without par value for $1.00 USD; and accept Golden Hind Shipping & Trading S.A.'s offer to purchase sixty two point five (62.5) registered shares without par value for $1.00 USD. *See* Phoenix Shipping's Board of Director Minutes of Special Meeting dated March 22, 2018, Exhibit 10.

90.     Golden Hind Shipping & Trading S.A. is another off-shore shell company organized under the laws of the Marshall Islands by George Gourdomichalis for the benefit of himself and one of his children. George Gourdomichalis reportedly gifted his son one of four shares certificates for sixty two point five (62.5) shares in PHOENIX SHIPPING in

the name of  Golden Hind.  *See* George Gourdomichalis Transcript, Exhibit 3, p. 59:23 – 60:4.

91.     Stathis Gourdomichalis remained the owner of fifty percent (50%) of PHOENIX  SHIPPING by and through THALASSA and George Gourdomichalis remained the owner of thirty   seven point five percent (37.5%) of PHOENIX SHIPPING by and through ALASTOR.

92.     In the aggregate, George Gourdomichalis and Stathis Gourdomichalis owned eighty seven point five percent (87.5%) of PHOENIX SHIPPING through shell companies with  Geourge Gourdomichalis' son having been gifted the remaining twelve point five perecent (12.5%)  by George Gourdomichalis through another off-shore shell company, Golden Hind. *See* Board of  Director Minutes of Special Meeting dated March 22, 2018, Exhibit 10.

### ii.      *Adamastos Shipping & Trading S.A.*

93.     ADAMASTOS SHIPPING was incorporated in the Republic of Liberia in December 2012.  *See* George Gourdomichalis Transcript, Exhibit 3, p. 96:7-18.

94.     ADAMASTOS SHIPPING has a registered address of 80 Broad Street, Monrovia,  Liberia, a mail-box address that it shares with all Liberian corporations. *Id*., at p. 97:16-24.

95.     While Defendant ADAMASTOS SHIPPING had a listed and registered address in  Liberia, it is simply a "brass plate", shell company possessing no active office space, employees,  telephone numbers, fax numbers, and/or staff at this location. Instead, all company business is  conducted by George Gourdomichalis and Stathis Gourdomichalis from their office on the Akti  Miaouli in Piraeus Greece, directly and/or indirectly by and through PHOENIX SHIPPING.

96.     ADAMASTOS SHIPPING has no physical office anywhere in the world and

has  never had a lease or otherwise paid rent for any office space in Liberia or Greece. *Id.*, at p. 97:20 – 98:10.

97.     ADAMASTOS SHIPPING has never had any employees or office staff. *Id.*, at p.  98:11-18.

98.     George Gourdomichalis was the President of ADAMASTOS SHIPPING and a  member of the board of directors of the company. *Id.*, at 99:22-25.

99.     Stathis Gourdomichalis was the Secretary of ADAMASTOS SHIPPING and a  director of the company. *See* Stathis Gourdomichalis Transcript, Exhibit 4, at p. 57:13-21.

100.     PHOENIX SHIPPING ministerially entered into a Ship Management Agreement with ADAMASTOS SHIPPING on December 7, 2012 to run all aspects of the M/V ADAMASTOS and ADAMASTOS SHIPPING's business, including all chartering, operations, crew management, technical management, commercial management, insurance services, and  accounting services for the M/V ADAMASTOS. *See* Ship Management Agreement-Adamastos  Shipping, Exhibit 11.

101.     George  Gourdomichalis negotiated and signed the Ship Management Agreement  on behalf of ADAMASTOS SHIPPING, contemporaneously with his service as the person in charge of all commercial operations and chartering for PHOENIX SHIPPING. *Id*; *See also* George  Gourdomichalis Transcript, Exhibit 3, at pp. 84:19 – 85:4.

102.     All notices under the Ship Management Agreement from PHOENIX SHIPPING to ADAMASTOS SHIPPING was "care of" PHOENIX SHIPPING at its office address on Akti  Miaouli Street in Piraeus, Greece. *See* Exhibit 11.

103.     PHOENIX SHIPPING performed all aspects of the commercial operation, chartering,  and technical operation for the M/V ADAMASTOS. *See* George

Gourdomichalis  Transcript, Exhibit 3, at pp. 85:12 – 86:8; 87:2-20; 88:7-21.

104.    No written instructions and/or objections as to the commercial operation of the M/V  ADAMASTOS were ever provided by ADAMASTOS SHIPPING to PHOENIX SHIPPING. *Id*.,  at p. 86:21 – 87:1; 88:7-21. This is because all decisions were taken by and for the benefit of  George Gourdomichalis and Stathis Gourdomichalis.

105.    All chartering negotiations on behalf of the M/V ADAMASTOS were performed  by George Gourdomichalis for and on behalf of PHOENIX SHIPPING and ADAMASTOS  SHIPPING. *Id*., at p. 87:5-12. No one else actively participated in and/or approved contract  negotiations and/or decisions for the chartering of the M/V ADAMASTOS. *Id*., at p. 87:16 – 20.

106.    All banking operations, financial records, and recordkeeping on behalf of ADAMASTOS SHIPPING was performed solely by George Gourdomichalis and Stathis Gourdomichalis by and through PHOENIX SHIPPING, or by person(s) under their direction and  control. *Id*.

107.    In addition, PHOENIX SHIPPING was the Document of Compliance holder for  the M/V ADAMASTOS. *Id.,* at pp. 147:20 – 148:3.

108.    The U.S. Coast Guard requires "a valid Document of Compliance certificate if you  are the responsible person who, or company which, owns a U.S. vessel engaged on foreign  voyages, carrying more than 12 passengers, or is a tanker, bulk freight vessel, freight vessel, or a  self-propelled mobile offshore drilling unit of 500 gross tons or more." 33 C.F.R. 96.330. The Document of Compliance ensures that the responsible party has completed a  valid  safety management audit, that the vessel is certified, and that the vessel operates in accordance with the  approved Safety Management System. *Id*.

109.     The M/V ADAMASTOS had a 2012 first preferred mortgage dated December 14, 2012. The sole signatory to the agreement on behalf of ADAMASTOS SHIPPING was George Gourdomichalis. *See* Adamastos Mortgage, Exhibit 12.

110.     The first preferred mortgage was a complex financing scheme in order to permit ADAMASTOS SHIPPING, PHOENIX SHIPPING, and the Gourdomichalis Brothers to take possession of a ship without contributing any significant capital and use the Vessel to trade for the benefit of its beneficial and dominating owners, without risk. *See* George Gourdomichalis Transcript, Exhibit 3, pp. 114:19 – 115:6.

111.     The M/V ADAMASTOS was acquired and held in the name of an off-shore shell company ADAMASTOS SHIPPING, so that George Gourdomichalis and Stathis Gourdomichalis would have a vessel to own and operate at PHOENIX SHIPPING. *See* Stathis Gourdomichalis Transcript, Ex. 4, at pp. 102:16-22 ("We proposed it to our father and he decided to go ahead with this deal because he wanted to assist us into managing more ships, et cetera, et cetera. And because we also were coming out of a very difficult financial situation at that time. My father decide -- so I can explain a bit more the structure of the deal, because it is very confusing.").

112.     In fact, ADAMASTOS SHIPPING put **no** equity into the Vessel. George Gourdomichalis Transcript, Exhibit 3, at pp. 114:19 – 115:6; 128:3-15. ADAMASTOS SHIPPING was not only undercapitalized, it had **no** capitalization.

113.     Specifically, the mortgage recorded a $6,000,000 first preferred mortgage on the Vessel; had a second tranche of $18,000,000 which was nothing more than a secondary security interest for the benefit of accounting purposes; and included a third tranche of $1,000,000 purportedly for repairs to the M/V ADAMASTOS. *Id*., at pp. 114:19 – 117:6.

114.     All repairs and/or necessary maintenance on the Vessel was carried out under the direction, control, and supervision of George Gourdomichalis, Stathis Gourdomichalis, and/or  PHOENIX SHIPPING superintendents acting at the direction of George Gourdomichalis and/or  Stathis Gourdomichalis. *See* Stathis Gourdomichalis Transcript, Exhibit 4, at p.105:11 – 106:7.

115.     The Vessel had a fair market value of merely $6,000,000 (at best), yet had liabilities  on it for over four (4) times its actual value as a 1995 dry bulk vessel.  *See* George Gourdomichalis  Transcript, Exhibit 3, at p. 115:14-18.

116.     George Gourdomichalis attended all meetings with the financing bank as the   dominating and controlling individual who would be responsible for the technical and commercial  operation of the Vessel, as well as hiring and firing of shipboard staff and crew, procurement of  insurances, and overall responsibility for the maintenance, management, and control of the Vessel.  *Id*., at p. 119:2-4; *see also* Exhibit 11.

117.     All notices under the first preferred mortgage were to be provided to ADAMASTOS SHIPPING care of PHOENIX SHIPPING at the PHOENIX SHIPPING address  of 25 Akti Miaoli Street, Piraeus Greece. *See* George Gourdomichalis Transcript, Exhibit 3, at p.  121:5-12.

118.     ADAMASTOS SHIPPING never paid any of the quarterly installments of $175,000 which were due and owing for the repayment of the $6,000,000 tranche before the Defendants George Gourdomichalis, Stathis Gourdomichalis, and PHOENIX SHIPPING  abandoned the M/V ADAMASTOS in Brazil in January 2015. *Id*., at p. 123:1 – 125:14.

119.     George Gourdomichalis and Stathis Gourdomichalis were signatories to the

ADAMASTOS SHIPPING bank account. *See* George Gourdomichalis Transcript, Exhibit 3, at p. 105:7-24.

120.   All communications from the crew regarding the M/V ADAMASTOS were sent only to PHOENIX SHPPING. *Id.*, at p. 149:19 – 150:4.

121.   No communications were ever sent to ADAMASTOS SHIPPING.

122.   The same arrangement is true for VIGOROUS SHIPPING, FEARLESS SHIPPING, and BLUE WALL. All communications go through PHOENIX SHIPPING.

123.   There were no written request for a budget submitted by ADAMASTOS SHIPPING and none prepared by PHOENIX SHIPPING for a budget to operate, maintain, and/or for repair of the M/V ADAMASTOS in Brazil. *Id.*, at p. 153:4-11.

124.   There was no request made by PHOENIX SHIPPING and/or ADAMASTOS SHIPPING to the mortgagee bank seeking additional support and/or to draw down further on the loan. *Id.*

125.   No written reports were made by PHOENIX SHIPPING to ADAMASTOS SHIPPING concerning the detention in Brazil. *Id.*, at pp. 152:25 – 153:25.

126.   No notice was provided by ADAMASTOS SHIPPING, PHOENIX SHIPPING, George Gourdomichalis, or Stathis Gourdomichalis or anyone else acting at their instructions, to charterers Plaintiff PACIFIC GULF concerning the deteriorating condition of the Vessel, even though Defendants, including George Gourdomichalis and Stathis Gourdomichalis knew that Defendants were abandoning the Vessel in January 2015.

127.   None of these decisions were contemporaneously or properly memorialized or recorded in contemporaneous communications between the corporate entities and/or in company records because at all relevant times, it was George Gourdomichalis and Stathis

Gourdomichalis who were making all decisions for and on behalf of the Vessel, ADAMASTOS SHIPPING and PHOENIX SHIPPING.

128.    ADAMASTOS SHIPPING was merely a captive corporation through which George Gourdomichalis, Stathis Gourdomichalis, and PHOENIX SHIPPING dominated and controlled all activities of the off-shore shell corporation and the M/V ADAMASTOS before ultimately abandoning the Vessel in Brazil in breach of the charter party agreement, for their own benefit, and to the detriment of Plaintiff PACIFIC GULF.

129.    ADAMASTOS SHIPPING, VIGOROUS SHIPPING, FEARLESS SHIPPING, BLUE WALL, THALASSA, ALASTOR, and PHOENIX SHIPPING are registered offshore in jurisdictions of convenience such as the Marshall Islands and Liberia because they are a 'tried and tested' tax shelter, with minimum regulatory oversight, and permitted to operate in Greece pursuant to Law 89 without requirement to pay income tax in Greece. *See* George Gourdomichalis Transcript, Exhibit 3, at pp. 33:10-11; 20:13 – 22.

### iii.    ***Blue Wall Shipping Ltd.***

130.    BLUE WALL was established by George Gourdomichalis and Stathis Gourdoichalis for the purpose of owning and operating a fleet of Vessels. *See* Blue Wall's Website Strategy, Exhibit 13.

131.    BLUE WALL was incorporated on February 8, 2013 in the Marshall Islands. *See* Blue Wall Certificate of Incorporation, Exhibit 14.

132.    BLUE WALL holds itself out as a Vessel owner and states that: "It operates **wholly owned**, top quality dry bulk vessels. BLUE WALL has built a strong balance sheet, **owns cash flow generating vessels** and is well positioned for growth through the cycle." *See* Blue Wall's Website Home Page, Exhibit 15.

133.    The BLUE WALL fleet consists of eight (8) vessels listed on its company website: M/V BRAZEN; M/V COURAGEOUS; M/V DAUNTLESS; M/V FEARLESS; M/V AUDACIOUS; M/V DEFIANT; M/V INTREPID; and the M/V VIGOROUS. *See* Blue Wall's Fleet, Exhibit 16.

134.    Defendant BLUE WALL regularly holds itself out to the maritime industry and press as being the owning company which acquires, operates, and owns all vessels within the commonly managed and operated fleet. *See* Exhibit 17.

135.    George Gourdomichalis and Stathis Gourdomichalis acquired the vessels by raising equity to purchase the vessels and spent over $45 million dollars of that private equity on the M/V BRAZEN; M/V COURAGEOUS; M/V DAUNTLESS; and the M/V FEARLESS. *See* Press Release, Exhibit 17.

136.    The corporate organization and structure of BLUE WALL was coordinated and organized by George Gourdmichalis and Stathis Gourdomichalis as a way to "tap the private equity market in order to try and raise capital from institution investors." *See* Stathis Gourdomichalis Transcript, Exhibit 4, at p. 16:11-18.

137.    The other "shareholders" of BLUE WALL are nothing more than financiers who held mortgages on the vessels in exchange for the capital they provided to BLUE WALL. *See* Stathis Gourdomichalis Transcript, Exhibit 4, at pp. 32:22 – 33:25.

138.    None of these financier shareholders and nominee directors for BLUE WALL have any practical, technical, and/or operational experience in vessel owning or management. *Id*., at pp. 69:14 – 72:18.

139.    There are no records of anyone apart from George Gourdomichalis and/or Stathis Gourdomichalis (or others acting at their instructions) participating in any technical or

operational decision on behalf of any of the BLUE WALL vessels. Specifically, there are no records of contemporaneous emails, minutes of meeting, inter-office memoranda, or text messages of such decisions being taken by anyone other than George Gourdomichalis or Stathis Gourdomichalis.

140.    The private equity investments are a veiled and secretive security interest designed to disguise George Gourdomicalis' and Stathis Gourdomichalis' domination, control, and ownership of the vessels in the BLUE WALL fleet while the individual shell companies maintain nominal "registered ownership" of the VIGOROUS and the other seven (7) vessels in the BLUE WALL fleet. *See* Stathis Gourdomichalis Transcript, Exhibit 4, p. 90:2 − 25; *see also* Exhibit 22 (George Gouromichalis speaking at 11th Maritime Congress on Alternative Ship Financing Arrangements).

141.    There is no record of anyone other than George Gourdomichalis and Stathis Gourdomichalis participating in any operational and/or chartering decision for the M/V ADAMASTOS, the M/V VIGOROUS, and/or any other vessel owned through BLUE WALL.

142.    From the beginning, the desire and intention by George Gourdomichalis and Stathis Gourdomichalis was to have the entire BLUE WALL fleet subject to their technical, operational, and chartering control by and through a framework management agreement between PHOENIX SHIPPING and BLUE WALL. *See* Stathis Gourdomichalis Transcript, Exhibit 4, p. 98:12 − 99:13.

143.    Underscoring the fact that the shareholder/investors were signing up to provide financing for ships to be operated and controlled by George Gourdomichalis and Stathis Gourdomichalis, no one on the board of directors or shareholders ever objected

to and/or commented on the entry of a ship management agreement between PHOENIX SHIPPING and any of the SPVs. *Id.*, at 99:11-18.

144.    In fact, it was a condition of the BLUE WALL corporate arrangement that PHOENIX SHIPPING would serve as the technical manager, commercial operator, holder of the Document of Compliance, and control each and every aspect of each Vessel and nominal SPV owner.

145.    Each vessel in BLUE WALL's fleet of eight (8) vessels is nominally owned by offshore shell companies, which are dominated, operated, and controlled by George Gourdomichalis and Stathis Gourdomichalis directly and/or indirectly through PHOENIX SHIPPING.

146.    The respective registered owners of the eight (8) vessels include: Brazen Shipping & Trading S.A. as registered owner of the M/V BRAZEN; Courageous Shipping & Trading S.A. as registered owner of the M/V COURAGEOUS; Dauntless Shipping & Trading S.A. as registered owner of the M/V DAUNTLESS; Fearless Shipping & Trading S.A. as registered owner of the M/V FEARLESS; Audacious Shipping & Trading S.A. as registered owner of the M/V AUDACIOUS; Defiant Shipping & Trading S.A. as registered owner of the M/V DEFIANT; Intrepid Shipping & Trading S.A. as registered owner of the M/V INTREPID; and Vigorous Shipping & Trading S.A. as registered owner of the M/V VIGOROUS. *See* Vessel Structure Chart, Exhibit 23.

147.    George Gourdomichalis is the President of all of the companies. *See* Stathis Gourdomichalis Transcript, Exhibit 4, at p. 45:16-19.

148.    Stathis Gourdomichalis is the Secretary and Treasurer of all of the companies. *See* Stathis Gourdomichalis Transcript, Exhibit 4, at pp. 44:20 - 45:11.

149.     Although each vessel in the fleet of BLUE WALL was registered in the name of an individual one-ship company, George Gourdomichalis and Stathis Gourdomichalis, directly and/or indirectly, by and through PHOENIX SHIPPING, BLUE WALL, and other off-shore entities beneficially own and operated these vessels as assets of a single business enterprise.

150.     The purported corporate independence of the respective vessel owners is simply fictitious, as they are entirely subjugated to business goals and practices of George Gourdomichalis and Stathis Gourdomichalis.

151.     BLUE WALL's address for public inquiries is "c/o Phoenix Shipping and Trading, 47-49 Akti Miaouli, 5th Floor, Piraeus, 18536." *See* Blue Wall's Contact Information, Exhibit 19.

152.     Although BLUE WALL's business is conducted by and through George Gourdomichalis and Stathis Gourdomichalis at their PHOENIX SHIPPING office, BLUE WALL does not have a lease and/or otherwise does not pay rent and/or utilities to PHOENIX SHIPPING for the use of the office space. *See* Stathis Gourdomichalis Transcript, Exhibit 4, at p. 69:10-13.

153.     BLUE WALL does not have any independent telephone numbers, fax numbers, employees, or staff separate and apart from PHOENIX SHIPPING. *Id.*

154.     George Gourdomichalis is the Chief Executive Officer of BLUE WALL. *See* George Gourdomichalis Transcript, Exhibit 3, at p. 173:4-6.

155.     George Gourdomichalis serves as the CEO of BLUE WALL pursuant to a Service Agreement by and between BLUE WALL and George Gourdomichalis' wholly owned 'investment company' Defendant ALASTOR. *Id.*, at p. 188:18-23.

156.     Stathis Gourdomichalis is the Chief Operating Officer of BLUE WALL. *Id.*, at p. 173:7-9.

157.     Stathis Gourdomichalis serves as the COO of BLUE WALL pursuant to a Service Agreement by and between BLUE WALL and Stathis Gourdomichalis' wholly owned 'investment company' Defendant THALASSA. *See* Stathis Gourdomichalis Transcript, Exhibit 4, p. 54:20 – 55:5.

158.     George Gourdomichalis and Stathis Gourdomichalis are both on the board of directors for BLUE WALL and are the only "Class A" directors. *See* George Gourdomichalis Transcript, Exhibit 3, at p. 174:1-6.

159.     A "Class A" director is someone who is required to have shipping experience and technical and commercial management of vessels. *Id.*, at p. 174:7-12.

160.     George Gourdomichalis and Stathis Gourdomichalis are both listed as "Key Men" who are required pursuant to the Articles of Incorporation of BLUE WALL to provide commercial operations and technical services to BLUE WALL by and through their roles as CEO and COO respectively and through their commercial operation and technical management of the BLUE WALL fleet of vessels by PHOENIX SHIPPING. *Id.*, at p. 178:5-17.

161.     George Gourdomichalis and Stathis Gourdomichalis, directly and/or indirectly through PHOENIX SHIPPING, dominate and control the operation of the entire BLUE WALL fleet of vessels. *Id.*, at p. 184:22 – 185:2.

      ***iv.***     ***Vigorous Shipping & Trading S.A. and Fearless Shipping & Trading S.A.***

162.     VIGOROUS SHIPPING was incorporated in the Republic of Liberia in February 2014. *See* George Gourdomichalis Transcript, Exhibit 3, p. 199:20-25.

163.    FEARLESS SHIPPING was also incorporated int the Republic of Liberia.

164.    VIGOROUS SHIPPING and FEARLESS SHIPPING each have a registered address of 80 Broad Street, Monrovia, Liberia, a mail-box address that they share with all Liberian corporations. *See* Ship Management Agreement – Vigorous Shipping, Exhibit 20.

165.    While Defendants VIGOROUS SHIPPING and FEARLESS SHIPPING each have a listed and registered address in Liberia, they are simply off-shore "brass plate", shell companies possessing no active office space, employees, telephone numbers, fax numbers, and/or staff at this location. Instead, all company business is conducted by George Gourdomichalis and Stathis Gourdomichalis, directly and/or indirectly, by and through PHOENIX SHIPPING and BLUE WALL.

166.    VIGOROUS SHIPPING and FEARLESS SHIPPING have no physical office anywhere in the world and have never had a lease or otherwise paid rent for any office space in Liberia or Greece. *Id*.

167.    VIGOROUS SHIPPING has never had any employees or office staff. George Gourdomichalis Transcript, Exhibit 3, p. 202:3-5.

168.    George Gourdomichalis is the President of VIGOROUS SHIPPING and a director of the company. *Id*., at pp. 200:25 – 201:5.

169.    Stathis Gourdomichalis was the Secretary and Treasurer of VIGOROUS SHIPPING and a director of the company. *Id.*, at p. 201:6-11.

170.    George Gourdomichalis and Stathis Gourdomichalis hold the same officer and board of director positions in FEARLESS SHIPPING and each of the six (6) other shell company SPVs which nominally serve as the registered owners of the vessels in the BLUE WALL fleet. *Id*.

171.    PHOENIX SHIPPING entered into a Ship Management Agreement with

VIGOROUS SHIPPING on February 14, 2014 to run all aspects of the M/V VIGOROUS and VIGOROUS SHIPPING's business, including all chartering, operations, crew management, hiring and firing of all shipboard staff, technical management, commercial management, insurance services, and accounting services for the M/V VIGOROUS. *See* Ship Management Agreement – Vigorous Shipping, Exhibit 20.

172.    The agreement was not negotiated at arms-length and is virtually identical to the services provided by PHOENIX SHIPPING and George Gourdomichalis and Stathis Gourdomichalis to ADAMASTOS SHIPPING. *Cf*. Exhibit 11 and Exhibit 20.

173.    The same type of ship management agreement is also in place between PHOENIX SHIPPING AND FEARLESS SHIPPING.

174.    VIGOROUS SHIPPING and FEARLESS SHIPPING, along with the six (6) other SPV entities has its mailing address at "c/o Phoenix Shipping and Trading, 47-49 Akti Miaouli, 5th Floor, Piraeus, 18536." *See* Equasis, Exhibit 18.

175.    PHOENIX SHIPPING maintains all of the corporate books, records, and financial records for VIGOROUS SHIPPING and FEARLESS SHIPPING.

176.    Even though the M/V VIGOUROUS is 'registered' to VIGOUROUS SHIPPING, in actuality, it is beneficially owned, operated, dominated and controlled by George Gourdomichalis and Stathis Gourdomichalis directly and indirectly by and through PHOENIX SHIPPING, BLUE WALL, and/or others acting at the instructions of George Gourdomichalis and Stathis Gourdomichalis.

177.    George Gourdomichalis and Stathis Gourdomichalis, by and through PHOENIX SHIPPING, hold the Document of Compliance for the VIGOROUS.

178.    The Office of the Deputy Commissioner of Maritime Affairs for the Republic of

Liberia maintains copies of the first preferred mortgage for the M/V VIGOROUS, which connects the Defendants and the other vessel-owning entities and establishes George Gourdomichalis and Stathis Gourdomichalis as the beneficial owners of the M/V VIGOROUS. *See* Vigorous Mortgage, Exhibit 21.

179.    On December 30, 2014, VIGOROUS SHIPPING and mortgagee CIT Finance LLC entered into a first preferred mortgage agreement. *See* Exhibit 21.

180.    Under the loan agreement, VIGOROUS SHIPPING pledged its only asset, the M/V VIGOROUS, as collateral to secure a $24,150,000 loan for two (2) other entities, Brazen Shipping & Trading S.A. (hereinafter "BRAZEN") and Dashing Shipping & Trading S.A. (hereinafter "DASHING"), both of which are owned, operated, and controlled by George Gourdomichalis and Stathis Gourdomichalis, directly and/or indirectly through PHOENIX SHIPPING and/or BLUE WALL. *Id.*

181.    VIGOROUS SHIPPING, as collateral guarantor, agreed to guarantee all liabilities of BRAZEN and DASHING in the financial documents. *Id.* Such guarantee was given without compensation or an arms-length contract because VIGOROUS SHIPPING, just like all other single purpose entities in the BLUE WALL fleet, is owned, dominated, and/or controlled by George Gourdomichalis and Stathis Gourdomichalis.

182.    At the direction of George Gourdomichalis and Stathis Gourdomichalis, BLUE WALL guaranteed all liabilities of BRAZEN and DASHING in the financial documents as the "parent guarantor". *Id.*

183.        Pursuant to Schedule 1, Part A, of the mortgage agreement, VIGOROUS SHIPPING, BLUE WALL, and borrowers BRAZEN and DASHING reflect that the address for all communications is "c/o Phoenix Shipping and Trading, 47-49 Akti Miaouli, 5th Floor, Piraeus,

18536." *Id.*

184.    Even though the M/V FEARLESS is 'registered' to FEARLESS SHIPPING, in actuality, it is beneficially owned, operated, dominated and controlled by George Gourdomichalis and Stathis Gourdomichalis directly and indirectly by and through PHOENIX SHIPPING, BLUE WALL, and/or others acting at the instructions of George Gourdomichalis and Stathis Gourdomichalis.

185.    George Gourdomichalis and Stathis Gourdomichalis, by and through PHOENIX SHIPPING, hold the Document of Compliance for the FEARLESS.

186.    The Office of the Deputy Commissioner of Maritime Affairs for the Republic of Liberia maintains copies of the first preferred mortgage for the Defendants other vessels which connects  the Defendants and the other vessel-owning entities.

187.    The First Preferred Mortgage for the M/V AUDACIOUS identifies a Loan Agreement dated June 18, 2014 between: Courageous Shipping & Trading S.A., Dauntless Shipping & Trading S.A., Defiant Shipping & Trading S.A., Fearless Shipping & Trading S.A., and Intrepid Shipping & Trading S.A., as joint and several borrowers from Joh. Berenberg, Gossler & Co. KG for a loan facility of $30,000,000. *See* Exhibit 25.

188.    This mortgage and loan facility further establishes George Gourdomichalis and Stathis Gourdomichalis as the beneficial owners of the M/V FEARLESS. *See* Exhibit 26.

189.    All notice communications to any of the six (6) brass-plate shell companies, including FEARLESS SHIPPING were to be made c/o PHOENIX SHIPPING with attention to Mr. Stathis Gourdomichalis, with the address on the Akti Miaouli in Piraeus Greece. *Id.*, at p. 55.

190.    A supplemental agreement amending the Loan Agreement entered into on April 1, 2016 was signed by George Gourdomichalis on behalf of each of six (6) brass-plate shell

companies, including FEARLESS SHIPPING.

191.     BLUE   WALL,   at   the   direction   of   George   Gourdomichalis   and   Stathis Gourdomichalis, regularly cross-guarantee and collateralize each of the single purpose entities that it owns and controls not for the benefit of the individual vessel owning company, but for the benefit of themselves through their various shell companies.

192.     The   Defendants   individually   and/or   collectively   are   part   of   a   single   business enterprise disguised as separate business entities, but in actuality are dominated and controlled by George   Gourdomichalis   and   Stathis   Gourdomichalis   by   and   through   PHOENIX   SHIPPING, BLUE WALL, ALASTOR, THALASSA and other nominal off-shore shell companies.

193.     The finances and business activities of Defendants are so intertwined, and at the subject and control of George Gourdomichalis and Stathis Gourdomichalis that there exists such a unity of ownership and interest between them that no genuine separation exists.

194.     All Defendants were, at all relevant times, operated, dominated, controlled, and managed by George Gourdomichalis and Stathis Gourdomichalis by and through their various shell entities, which results in an intermingled web of companies doing business as one (1) single economic enterprise that disregards all corporate formalities.

195.     Though Defendants comprise nominally separate corporate business / legal entities, their ownership and control is so intertwined and fused that they are only distinct from one another as a matter of pro forma paperwork; not in the functional and actual ways in which the companies are dominated and controlled by George Gourdomichalis and Stathis Gourdomichalis.

196.     This   blatant   disregard   for   separate   and   distinct   corporations   and   dominion   by common officers, managers, and directors demonstrates that the Defendants are mere alter egos of each   other   and   subject   to   the   dominion   and   control   of   George   Gourdomichalis   and   Stathis

Gourdomichalis by and through their various shell companies including PHOENIX SHIPPING, ALASTOR, THALASSA, and BLUE WALL.

        **b.**        <u>**Fraud in the Underlying Transaction**</u>

197.    Defendants PHOENIX SHIPPING, George Gourdomichalis, Stathis Gourdomichalis, and ADAMASTOS SHIPPING knew that ADAMASTOS SHIPPING was not adequately capitalized at the time the company was formed and throughout their operation of the Vessel. *See* George Gourdomichalis Transcript, Exhibit 3, at p. 238:24 – 239:1.

198.    Defendants PHOENIX SHIPPING, George Gourdomichalis, Stathis Gourdomichalis, and ADAMASTOS SHIPPING knew that ADAMASTOS SHIPPING had very limited cash on hand and no reserve to pay for any costs, fees, and/or expenses which might necessarily arise with a Vessel. *Id*., at p. 105:6-24.

199.    Defendants PHOENIX SHIPPING, George Gourdomichalis, Stathis Gourdomichalis, and ADAMASTOS SHIPPING knew that ADAMASTOS SHIPPING had stopped paying the $18,000 per month management fee and other amounts due and owing pursuant to the Ship Management Agreement. *See* Stathis Gourdomichalis Transcript, Exhibit 4, at pp. 60:12-61:7; p. 82:2-6.

200.    The ADAMASTOS SHIPPING bank account had a mere $6,453.47 in March of 2014, *i.e.* right before the Vessel was chartered to Plaintiff PACIFIC GULF. See Stathis Gourdomichalis Transcript, Exhibit 4 at pp. 97:14 – 98:1.

201.    Defendants PHOENIX SHIPPING, George Gourdomichalis, Stathis Gourdomichalis, THALASSA, and ADAMASTOS SHIPPING knew that THALASSA made several payments for and on behalf of ADAMASTOS SHIPPING to PHOENIX SHIPPING totaling $52,100.00. *Id*., at p. 95:17 – 96:13; *see also* Berenberg Bank Statement of PHOENIX

SHIPPING, Exhibit 24.

202.    Payments were not loans, were not recorded in writing, and there was no obligation for THALASSA to make such payments for and on behalf of ADAMASTOS SHIPPING to PHOENIX SHIPPING. The payment(s) were made solely because George Gourdomichalis and Stathis Gourdomichalis dominate and control all of the Defendants.

203.    Defendants PHOENIX SHIPPING, George Gourdomichalis, and Stathis Gourdomichalis used their domination and control over Defendant ADAMASTOS SHIPPING to enter into a charter party agreement with Plaintiff PACIFIC GULF, despite knowledge that the Vessel was unseaworthy, was not fit for its intended purpose, and was not in compliance with international regulations and requirements. *See* Exhibit 1; *see* George Gourdomichalis Transcript, Exhibit 3; p. 147:20 – 148:3.

204.    Despite the clear undercapitalization and failure by Defendants to run a financially sound or solvent vessel, George Gourdomichalis, directly and/or indirectly through PHOENIX SHIPPING, negotiated the charter of the M/V ADAMASTOS with Plaintiff PACIFIC GULF on April 8, 2014.

205.    Despite the fact that George Gourdomichalis, Stathis Gourdomichalis, and PHOENIX SHIPPING knew that the Vessel was deteriorating, knew that the Vessel and ADAMASTOS SHIPPING were undercapitalized, and knew that the ADAMASTOS SHIPPING  bank account did not have adequate funds, Defendants failed, neglected and/or refused to provide  any warning to PACIFIC GULF of the unseaworthy nature of the Vessel and  fraudulently permitted the charterers and cargo interests to load a high value cargo of soyabeans onboard.

206.    Defendants   PHOENIX   SHIPPING,   George   Gourdomichalis,   Stathis

Gourdomichalis, and ADAMASTOS used these false representations to their own advantage in  order obtain PACIFIC GULF's business and to earn **$1,114,365** in charter hire.

207.   PACIFIC GULF would not have contracted for the use of the M/V ADAMASTOS absent  these material misrepresentations by the Defendants that the Vessel was, among other warranties  and  guarantees contained in the charter party agreement, a seaworthy vessel that was fit for its  intended purpose and in compliance with all international regulations, laws, and requirements.

208.   Defendants George Gourdomichalis, Stathis Gourdomichalis, and PHOENIX SHIPPING for their own benefit and the fraudulent benefit of the remaining vessels within the  BLUE  WALL  fleet, including  the  M/V FEARLESS,  purposefully  failed,  neglected, and/or  refused to satisfy the claims against the M/V ADAMASTOS in Brazil and instead abandoned the  vessel, leaving Plaintiff PACIFIC GULF to deal with the claims from cargo owners  and  sub- charterers which are no less than $19,296,671.50, plus applicable interest, costs, and fees.

209.   Defendants George Gourdomichalis, Stathis Gourdomichalis, and PHOENIX SHIPPING  now intend  to  own  and  operate  their remaining vessels, including  the M/V FEARLESS  with impunity,  as it attempts to hide  behind the  sham company  FEARLESS SHIPPING, without  providing Plaintiffs payment or security for the  damages caused by Defendants  through their domination, control, and abuse of the M/V ADAMASTOS to commit a wrong which  has caused Plaintiffs significant injuries and damages.

## COUNT IV – SUCCESSOR LIABILITY

210.   Plaintiffs restate and re-allege paragraphs 1 – 209 in the above foregoing Second Amended Verified Complaint as if set forth herein.

211.     BLUE WALL, VIGOROUS SHIPPING, FEARLESS SHIPPING (as well as the other six (6) one-ship company entities and subsidiaries of BLUE WALL), by and through PHOENIX SHIPPING and  individual Defendants, George Gourdomichalis and Stathis Gourdomichalis, comprise successor  corporate business entities of, *inter alia*, ADAMASTOS SHIPPING.

212.     The Defendants BLUE WALL,VIGOROUS, and FEARLESS: a) occupy and carry on business  from the same business premises as ADAMASTOS SHIPPING, *i.e.* the offices of George Gourdomichalis and Stathis Gourdomichalis at PHOENIX SHIPPING; b) they transact their  business by and through substantially identical personnel; c) share common officers and directors, *i.e.* the Gourdomichalis brothers; d) have the same financing banks financing their business and  bank accounts; e) have a continuity of the same principal, controlling shareholders who make  decisions for the companies, *i.e.* George Gourdomichalis and Stathis Gourdomichalis; f) there is a  continuity of general business operations through PHOENIX SHIPPING including the same  insurers The American Club and same accountants Moore Stephens; and g) there is continuity of  assets to the new single purpose entities by and through PHOENIX SHIPPING.

213.     Notwithstanding the purported difference in the companies, the commercial, technical, and chartering operations of BLUE WALL, VIGOROUS SHIPPING, FEARLESS SHIPPING, and the other  single vessel owning offshore shell companies and their Vessels, are performed by the same Key   Men and the same employees working out of the same PHOENIX SHIPPING office which owned,  dominated, controlled, and operated ADAMASTOS SHIPPING, all at the direction, domination,   and control of George Gourdomichalis and Stathis Gourdomichalis.

214.     The Defendants have in common key management personnel and all management

decisions are conducted through George Gourdomichalis and Stathis Gourdomichalis.

215.    Defendants BLUE WALL, VIGOROUS SHIPPING, FEARLESS SHIPPING and the remaining offshore shell companies within the BLUE WALL fleet are a mere continuation of the business of ADAMASTOS SHIPPING, by and through George Gourdomichalis, Stathis Gourdomichalis, and PHOENIX SHIPPING, as evidenced by the common identity of assets, location, management, personnel, control, stockholders, service providers, accountants, and insurers.

216.    Both the M/V ADAMASTOS and the M/V FEARLESS were entered for P&I insurance with the American Club. A member-based protection and indemnity club for which George Gourdomichalis has sat on the Board of Directors since 2004. George Gourdomichalis has been on the American Club Board of Directors as a representative of PHOENIX SHIPPING since 2012 and is currently the Chairman of the Board.

217.    The Defendants, together with the American Club, negligently, maliciously, corruptly, and improperly conspired, confederated, and agreed to abandon the M/V ADAMASTOS in Brazil and failed, neglected, and/or refused to pay the Cargo Claim which is rightly due and owing to Plaintiffs and for which Defendants have no defense.

218.    In addition, all of the Defendants and other off-shore shell entities have their accounting and auditing services performed by the same company, Moore Stephens.

219.    Accordingly, BLUE WALL and the one-ship-companies it holds, including FEARLESS SHIPPING, are liable for Plaintiffs' claims as the successor corporations of ADAMASTOS SHIPPPING and the M/V FEARLESS may be attached as security for Plaintiffs' claims.

## V.  APPLICATION FOR ATTACHMENT
## UNDER SUPPLEMENTAL ADMIRALTY RULE B

220.     Plaintiffs restate and re-alleges paragraphs 1 – 219 in the above foregoing Second Amended  Verified Complaint.

221.     Plaintiffs' claim against Defendants for breach of the charter party agreement is a  maritime claim. This is an ancillary proceeding to secure jurisdiction and security over Defendants.

222.     Defendants are not present and cannot be found in the District within the meaning  of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. *See* Affidavit of Attorney Briton P. Sparkman, Exhibit 32. Notwithstanding, the Defendants have  within the District tangible personal property comprised of the substitute res of USD 5,060,000 held  in the Court Registry as substitute security for the M/V FEARLESS,  IMO No.  9228265, which is subject to attachment as security for Plaintiffs' claims.

223.     Interest, costs, and attorney's fees are routinely awarded to the prevailing party  under English Law and the procedural rules of London arbitration. It is standard for interest to be  awarded to the prevailing party in the amount of 5.0%, compounded quarterly. *See* ***Exhibit 2***, *pgs. 21-23*.

224.     Plaintiffs expect  to  recover  the  following  amounts  in  arbitration  from Defendants:

| | | |
|---|---|---|
| A. | Principal Claim | $18,500,000.00 |
| B. | Estimated Interest for Principal Claim: *3 years at 5.0 %, compounded quarterly* | $2,973,958.58 |
| C. | Arbitration Cost: | $7,100.00 |

D.      Estimated Attorney's Fees:                     $1,000,000.00

**TOTAL:**                                            **$22,481,058.58**

225.    Therefore, Plaintiffs' total claim for breach of the charter party, plus applicable interest, costs, and fees in the aggregate estimated to be no less than **$22,481,058.58**.

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs pray as follows:

A.      That process in due form of law, according to the practice of this Honorable Court  in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants  be cited to appear and answer the allegations of this Second Amended Verified Complaint;

B.      That if Defendants cannot be found within this district, then all of their respective tangible or intangible property within this district, including substitute *res* held in the Registry of the Court for the M/V  FEARLESS, her engines,  boilers, tackle, apparel, and all necessary appurtenances thereto, as well as debts, credits, or effects  including but not limited to accounts, checks, disbursement advances, payments, property on  board the M/V FEARLESS, owned by the said Defendants or in the hands or control of persons  named as garnishees in the Process of Maritime Attachment and Garnishment be attached and  seized pursuant to Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

C.      That a judgment be entered against the Defendants in the sum of **$22,481,058.58** and the proceeds of the assets attached be applied in satisfaction thereof;

D.      That the Plaintiffs have such other, further, and different relief as the Court deems just, proper, and equitable.

Respectfully submitted,

Dated:      October 15, 2019          CHALOS & CO, P.C.
               Houston, Texas

By:    /s/ Briton P. Sparkman
       George M. Chalos
       SDTX Federal Id No. 623727
       Briton P. Sparkman
       SDTX Federal Id No. 1148116
       Margaret L. Manns
       SDTX Federal Id No. 24091010
       7210 Tickner Street
       Houston, TX 77055
       PH:  (713) 574-9582
       FX:  (866) 702-4577