UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PACIFIC GULF SHIPPING CO., *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-727 |
| | § | |
| ADAMASTOS SHIPPING & TRADING S.A., | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are the Motion for Summary Judgment (the "Motion") filed by Defendants Blue Wall Shipping Limited ("Blue Wall") and Fearless Shipping & Trading S.A. ("Fearless") (collectively, "Defendants") (Doc. #86), the Response filed by Plaintiffs Pacific Gulf Shipping Co. ("Pacific Gulf") and Michael Else & Company LTD. ("MECO") (collectively, "Plaintiffs") (Doc. #90), Defendants' Reply (Doc. #94), and Defendants' Notice of Supplemental Authority (Doc. #100). The Court also heard oral argument on the Motion on April 14, 2021. Having reviewed the parties' arguments and applicable legal authority, the Court grants the Motion.

### I. Background

This is an ancillary Rule B maritime attachment action regarding the enforcement of Plaintiff Pacific Gulf's 2017 foreign arbitration award (the "Adamastos Award") against Adamastos Shipping & Trading S.A. ("Adamastos Shipping") due to the breach of a charter party agreement for the use of the M/V Adamastos, a vessel owned by Adamastos Shipping.[1] Doc. #79

---

[1] Though Adamastos Shipping is listed as a defendant in the Second Amended Complaint, it was never served and has not made an appearance in this case. *See* Doc. #79 ¶ 5. The same is true for Vigorous Shipping & Trading S.A. ("Vigorous"), Phoenix Shipping & Trading S.A., Thalassa

¶¶ 14, 40. Plaintiffs allege that George and Efstathios Gourdomichalis (the "Gourdomichalis Brothers") controlled numerous entities that functioned as "mere alter egos for each other," including Adamastos Shipping, Defendant Blue Wall, and Defendant Blue Wall's eight wholly owned subsidiaries, such as Vigorous and Defendant Fearless. *Id.* ¶¶ 181, 219. Therefore, Plaintiffs argue, Defendants are liable for the Adamastos Award and related breach of contract claims based on either alter-ego or successor liability. *Id.* ¶¶ 181, 219. As such, Plaintiff Pacific Gulf filed this lawsuit in February 2019, asserting claims for recognition and enforcement of the Adamastos Award and securing an attachment of the M/V Fearless, a vessel owned by Defendant Fearless, as partial security. Doc. #1; Doc. #5.

Three months before this case was filed, Plaintiff Pacific Gulf filed a separate suit for the same claims in the District Court of Oregon ("Oregon Action") and secured the attachment of the M/V Vigorous, a vessel owned by Vigorous, as partial security for the Adamastos Award. Doc. #87, Ex. 8 at 351; Doc. #86 at 3. In both cases, Plaintiff Pacific Gulf filed a Third Amended Complaint adding Plaintiff MEMCO as a party. Doc. #76 ("Amended Complaint"); Doc. #87, Ex. 8 at 455. Not only were the plaintiffs identical in each case, but Defendant Blue Wall appeared in both cases and the parties agreed to use the same discovery for both cases. Doc. #86 at 7. The only difference between the Oregon Action and this case is which of Defendant Blue Wall's wholly owned subsidiaries own the vessel attached and therefore appeared as defendants—Vigorous as a defendant in the Oregon Action where the M/V Vigorous was attached and Defendant Fearless in this case where the M/V Fearless was attached. *Id.* at 3.

---

Holdings S.A., Alastor Marine S.A., George Gourdomichalis, and Efstathios Gourdomichalis. *Id.* ¶ 6–13. Defendants are the only named defendants who have made an appearance in this case.

Following the close of discovery, Defendant Blue Wall and Vigorous moved for summary judgment in the Oregon Action. Doc. #87, Ex. 1. Judge Michael W. Mosman, United States District Court of Oregon, dismissed Plaintiffs' successor-liability claims and granted summary judgment for Defendant Blue Wall and Vigorous on the remaining alter-ego claims. Doc. #83, Ex. 4; *id.*, Ex. 1. The Ninth Circuit affirmed both rulings. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893 (9th Cir. 2021). Defendants now move for summary judgment, arguing that Plaintiffs are collaterally estopped from relitigating whether Defendant Blue Wall or its subsidiaries are liable as alter egos of or successors to Adamastos Shipping or, alternatively, that the evidence does not support either theory of liability. Doc. #86 at 14, 15, 18.

## II. Legal Standards

### a. Summary Judgment

Summary judgment is proper if the movant demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. "A genuine dispute as to a material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Rogers v. Bromac Title Services, L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (citation omitted). If the movant does not bear the burden of proof at trial and shows the absence of evidence in the record, "the burden shifts to the nonmovant to show that the motion should not be granted. To do so, the nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports his or her claim." *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017), *as revised* (July 14, 2017). "The evidence and all inferences must be viewed in the light most favorable to the non-movant." *Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226, 228–29 (5th Cir. 2019). However, "[u]nsubstantiated assertions" and "conclusory allegations are not competent summary judgment

evidence and are insufficient to overcome a summary judgment motion." *Hugh Symons Grp., PLC v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002).

### b. Collateral Estoppel

For collateral estoppel, also known as issue preclusion, to bar the relitigating of an issue of fact or law, four conditions must be met: "(i) the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action; (ii) the issue must have been fully and vigorously litigated in the prior action; (iii) the issue must have been necessary to support the judgment in the prior case; and (iv) there must be no special circumstance that would render estoppel inappropriate or unfair." *Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013) (cleaned up). However, the fourth requirement "applies only to the use of offensive (non-mutual) collateral estoppel by the plaintiff." *Id.* Unlike claim preclusion, collateral estoppel does not require complete identity of parties in both suits. *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995). However, collateral estoppel does not apply unless "the facts and the legal standard used to assess [the relevant issues] are the same in both proceedings." *Baros v. Texas Mexican Ry. Co.*, 400 F.3d 228, 233 (5th Cir. 2005). Absent "significantly different" analysis, "[m]inor variations in the application of what is in essence the same legal standard do not defeat preclusion." *Smith v. Bayer Corp.*, 564 U.S. 299, 312 n.9 (2011) (citation omitted).

### III. Analysis

#### a. Alter-ego liability

Plaintiffs argue that their alter-ego liability claims are not barred by collateral estoppel because "Fifth Circuit case law supporting the piercing of the corporate veil is more robustly defined compared" to the law applied in the Oregon Action and "this case involves additional facts in support of the alter-ego relationship between [the Gourdomichalis Brothers] and [Defendant]

4

Fearless." Doc. #90 at 16. As to the different legal standards, the Fifth Circuit confers alter-ego liability "only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (citation omitted) (referring to the second requirement as the "fraud or injustice prong"). In the Oregon Action, the Ninth Circuit held that alter-ego liability can only be found if "(1) the controlling corporate entity exercises total domination of the subservient corporation . . . , (2) injustice will result from recognizing the subservient entity as a separate entity, and (3) the controlling entity had a fraudulent intent or an intent to circumvent statutory or contractual obligations." *Pac. Gulf Shipping Co.*, 992 F.3d at 898. Aside from labeling Fifth Circuit precedent "more robustly defined," Plaintiffs have failed to explain how these two legal standards require "significantly different" analysis.[2] *See* Doc. #90; *Smith*, 564 U.S. at 312 n.9. As such, because Plaintiff only claims that additional facts exist regarding Defendant Fearless, the Court finds that collateral estoppel bars Plaintiffs' alter-ego claim against Defendant Blue Wall.

As to the additional facts regarding the alter-ego relationship between the Gourdomichalis Brothers and Defendant Fearless, Plaintiffs refer the Court to their Rule 56(c) Statement of

---

[2] Plaintiffs also argue that Judge Mosman did not assess their claim for reverse veil piercing, precluding the application of collateral estoppel. Doc. #90 at 17–18. But as with a traditional veil piercing case, "a reverse piercing case requires the creditor to establish an alter ego relationship between the individual debtor and corporation in order to treat them as one and the same." *Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 326 (5th Cir. 2006). Judge Mosman and the Ninth Circuit have already found no alter-ego relationship existed between Adamastos Shipping and Defendant Blue Wall. *Pac. Gulf Shipping Co.*, 992 F.3d at 900. As explained below, Plaintiffs have similarly failed to create a genuine issue of material fact regarding an alter-ego relationship between Adamastos Shipping and Defendant Fearless. As such, Plaintiffs' claims based on reverse veil piercing are also barred by collateral estoppel.

Material Disputed Facts. Doc. #90 at 16. Of the 117 paragraphs included as material disputed facts, only two refer to Defendant Fearless without analogous allegations regarding Vigorous:

> 59. Efstathios Gourdomichalis signed the Ship Management Agreements on behalf of Phoenix Shipping for the agreements with Fearless Shipping, Audacious Shipping, Dauntless Shipping, and Intrepid Shipping and signed on behalf of the owner for Brazen Shipping. *Id*.
>
> 69. The First Preferred Mortgage for the M/V AUDACIOUS identifies a Loan Agreement dated June 18, 2014 between: Courageous Shipping & Trading S.A., Dauntless Shipping & Trading S.A., Defiant Shipping & Trading S.A., Fearless Shipping & Trading S.A., and Intrepid Shipping & Trading S.A., as joint and several borrowers from Joh. Berenberg, Gossler & Co. KG for a loan facility of $30,000,000. *See* Verified Complaint, Exhibit 25. This mortgage and loan facility further establishes George Gourdomichalis and Stathis Gourdomichalis as the beneficial owners of the M/V FEARLESS. *Id.*, at Exhibit 26. All notice communications to any of the six (6) brass-plate shell companies, including FEARLESS SHIPPING were to be made c/o PHOENIX SHIPPING with attention to Mr. Stathis Gourdomichalis, with the address on the Akti Miaouli in Piraeus Greece. *Id.*, at p. 55. A supplemental agreement amending the Loan Agreement entered into on April 1, 2016 was signed by George Gourdomichalis on behalf of each of **six** (6) brass-plate shell companies, including FEARLESS SHIPPING. *Id.*; *see also* Exhibit 85.

Plaintiffs have failed to articulate any manner, let alone "the precise manner," in which this evidence creates an issue of material fact regarding whether (1) Adamastos Shipping exercised complete control over the Defendant Fearless Shipping or (2) "such control was used to commit a fraud or wrong." *See* Doc. #90; *Carr*, 866 F.3d at 601; *Bridas S.A.P.I.C.*, 447 F.3d at 416; *Pac. Gulf Shipping Co.*, 992 F.3d at 900 (finding that such "facts, absent any evidence suggesting wrongdoing, do not reasonably justify a finding of alter-ego"). As such, the Court finds that Plaintiffs have failed to offer additional facts upon which "a reasonable jury could return a verdict for" the alter-ego claims against Defendant Fearless. *See Rogers*, 755 F.3d at 350.

Accordingly, the Motion is granted as to Plaintiffs' alter-ego claims.

### a. Successor liability

As with alter-ego liability, Plaintiffs argue that collateral estoppel does not bar their claims for successor liability because "[t]he Fifth Circuit standard (once again) is distinct from the legal standard applied by Judge Mosman in the District of Oregon." Doc. #90 at 19. The legal standard for successor liability proffered by Plaintiff begins with "[a] corporation that acquires the assets of another corporation will not be liable for the predecessor corporation[']s [sic] liabilities except when . . ." *Id.* at 18. By Plaintiffs' own admission, successor liability cannot be established under Fifth Circuit precedent absent "the transfer of assets" from one corporation to another. *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985). Similarly, the Ninth Circuit affirmed Judge Mosman's dismissal of Plaintiff Blue Wall and Vigorous' successor liability claims based on their failure to plead the "transfer of all or substantially all of the predecessor's assets to the alleged successor." *Pac. Gulf Shipping Co.*, 992 F.3d at 897. As was conceded in the Oregon Action, there is no an allegation that Adamastos Shipping transferred assets to Defendant Blue Wall. Doc. #83, Ex. 5 at 21:9–12. Because the same legal standard and facts apply, the Court finds that collateral estoppel bars Plaintiffs' successor liability claims against Defendant Blue Wall.

As to Defendant Fearless' successor liability, Defendants argue that "Plaintiffs have failed to allege anywhere in the [] Amended Complaint that Blue Wall or Fearless Shipping received or purchased all, or indeed any, of the assets of Adamastos Shipping." Doc. #96 at 19. Plaintiffs do not address the allegations made in the Amended Complaint, but argue that Defendants "can be held legally liable for the obligations of Adamastos Shipping" based on the "common identity of assets" evinced by the first forty paragraphs of Plaintiffs' Rule 56(c) Statement of Material Disputed Facts. Doc. #90 at 19. There is no mention of any asset owned by Defendant Fearless or Defendant Blue Wall that was previously owned by Adamastos Shipping in said paragraphs.

*See* Doc. #92, Ex. 12 ¶¶ 1–40. As such, the Court finds that Plaintiffs have failed to offer evidence upon which "a reasonable jury could return a verdict for" the successor-liability claims against Defendant Fearless Shipping. *See Rogers*, 755 F.3d at 350.

Accordingly, the Motion is granted as to Plaintiffs' successor-liability claims.

### IV.   Conclusion

In conclusion, the Court finds that collateral estoppel bars Plaintiffs' claims against Defendant Blue Wall. Plaintiffs have also failed to create a genuine issue of material fact regarding alter-ego liability and failed to allege a claim for successor liability against Defendant Fearless. For the foregoing reasons, the Motion is hereby GRANTED and this case is dismissed. This is a final judgment.

It is so ORDERED.

June 30, 2021
Date

_____
The Honorable Alfred H. Bennett
United States District Judge